[Filed March 20, 1890.]

## MERCHANT'S NATIONAL BANK, RESPONDENT, *v.* GEORGE POPE, APPELLANT.

REPORT OF REFEREE—WHEN MAY BE SET ASIDE.—The provisions of the Code of this State, to the effect that the court may affirm or set aside the report of a referee in whole or in part, and may make another order of reference as to all or so much of the report as is set aside, to the original referees or others, or may find the facts and determine the law itself and give judgment accordingly; and that upon a motion to set aside the report, the conclusions thereof shall be deemed and considered as the verdict of a jury, only authorizes the court to set aside such report as to conclusions of fact, under the same circumstances in which it is authorized to set aside the verdict of a jury and grant a new trial, which it is authorized to do when the verdict is against the great weight of evidence.

REFEREE'S REPORT—DUTY OF THE COURT WHEN SET ASIDE.—Where the court sets
aside the report of a referee in whole or in part, and elects to find the facts and
determine the law itself, it is its duty to find the facts and conclusions of law in
the same manner as it is required to do when it tries a case without the interven-
tion of a jury.

FACTOR—NO AUTHORITY TO PLEDGE GOODS CONSIGNED ONLY TO AMOUNT OF AD-
VANCES.—A factor or commission merchant, who receives goods to be sold upon
commission, has no authority to pledge them; but where he has advanced money
upon the goods, he thereby acquires a lien upon and special property in them to
the amount of such advances, which he may pledge for his own use.

FACTOR—DRAFT AGAINST CONSIGNMENTS—INTEREST.—Where certain commission mer-
chants received from time to time amounts of fish oil from a company engaged in
the Alaska trade, upon the understanding and promise to make sale of it for the
account of the company, and to render the proceeds thereof, less their charges for
services in that behalf, and it was agreed between the merchants and the company
that an account current of interest charges should be kept and paid at the rate of
10 *per cent per annum*, and the merchants, after receiving and shipping portions of
the oil to a consignee in a foreign market for sale, upon which they had made
advances to the company on account thereof, *drew in their own name and for their
own use* against the consignments, and negotiated the drafts upon their own credit,
but attached thereto the bills of lading as collateral security for the payment
thereof; *held*, that interest upon the money received by the merchants in the
negotiations of the drafts did not constitute a proper debit against them in their
account with the company.

THE FINDING OF FACT MUST AUTHORIZE THE JUDGMENT.—*Held, further*, that the cir-
cuit court could not properly decide that interest upon said money, so drawn, was
chargeable in the account against the said merchants, in the absence of a finding
of fact justifying such decision.

APPEAL from a judgment of the circuit court for the
county of Multnomah.

The respondent commenced an action against the appel-
lant and one H. G. McDonald to recover an alleged balance
of account between them and the Northwest Trading
Company, claimed to have been assigned to the respondent.

It was alleged in the complaint that the said company
was a private corporation; that the appellant and McDon-
ald were partners in the mercantile business at Portland,
Oregon, under the firm name of George Pope & Co.; that
at divers times between the twelfth day of March, 1886,
and the tenth day of March, 1889, the said Northwest
Trading Company delivered to said firm from time to time
large quantities of fish and oil of certain specified value,
upon the undertaking and promise of the firm to make
sale of the same for account of the said company and to
render the proceeds thereof, less the charges of the firm
for their services in the matter; that during said time the

said firm sold said fish and oil for certain sums of money averred in the complaint and received the proceeds of the sale; that said company advanced to said firm a certain amount of cash, and said firm received also other sums of money to the use of said company from divers parties; that said firm rendered an account of sales of a large quantity of oil for account of said company, upon which they made an overcharge in their commission upon the sales thereof; that during said time interest accrued upon moneys received by the firm upon the sales of fish and oil consigned to them by said company, and not promptly paid over, to the amount of $2,166.02; that an account of all the dealings was kept between said company and said firm, and divers payments to and charges against the company were made by the firm during said time, upon which there was due and owing from the firm the sum of $7,740.56; that the company sold and transferred its claim therefor to the respondent with the knowledge and consent of the firm, and that the respondent had demanded payment thereof.

The said appellant filed an answer to the said complaint, in which he denied his partnership with the said McDonald after the fifteenth day of August, 1888; admitted that said company delivered to the firm a large quantity of fish and oil, and that the same was delivered upon an undertaking and promise to make sale of the same for account of the company, and to render the proceeds thereof, less the charges of the firm, for services in such behalf, to said company; but denied that any of the said fish or oil was delivered to said firm, subsequent to July 31, 1888; denied the delivery of the amounts of fish and oil, and of their value, at various times alleged in the complaint, and of the receipts of some of the amounts of money alleged therein; admitted that the said firm of George Pope & Co., on the tenth day of March, 1889, rendered an account of sales to the said Northwest Trading Company in which they made an overcharge of $92.01, but denied that the firm made no return thereof; denied that any

interest accrued upon moneys received by the firm upon sales of fish or oil consigned to them by said company and not promptly paid over; denied that an account of all dealings was ever kept between the said trading company and said firm, or that there was due or owing from the firm upon said account the sum of $7,740.56 or any other sum, except the sum of $1,394.90, which the said firm are ready to pay to whomsoever shall be entitled to receive it, and denied the assignment of the said claim to the respondent.

The appellant, for further defense, alleged that said firm of Pope & Co., between the twenty-fifth of March, 1886, and the twenty-eighth of February, 1889, made advances of cash and payments of cash on account of sales of oil, and paid, laid out and expended large sums of money for insurance, shipping and other expenses and charges in shipping oil for said trading company to London and elsewhere, and for rents, postage stamps, telegraph charges, etc., amounting in the aggregate to $43,907.64; and that during the same period it was understood and agreed between the trading company and the said firm that an account current of interest charges should be kept and paid at the rate of ten *per cent per annum;* that during said period the balance of the interest account in favor of said firm and against said trading company amounted to $2,601.38; that between the tenth day of May, 1886, and the twenty-ninth day of February, 1889, the firm received cash for the trading company from proceeds of consignments and from sale of fish, including interest on drafts as charged in Liverpool, amounting in the aggregate to $47,903.92.

An exhibit was attached to the answer and made a part of it, known as "Exhibit A," which the appellant alleged in the answer contained a correct account of the said transactions between the parties.

It was also alleged in the answer that on September 1, 1886, the said H. C. McDonald was and for a long time prior thereto had been the secretary of the said trading company; that on the first day of September, 1886, the

said firm shipped to Liverpool six hundred and sixty-two barrels of oil, delivered by the said trading company to them for sale on commission; that said firm, after so shipping said oil, drew upon their consignee and agent for the amount of $5,936.92; that said draft was negotiated at Portland, Oregon, for said amount, and was placed to the credit of said firm at the Bank of British Columbia, where it was negotiated; that on the same day the said McDonald, then secretary of the trading company, drew a check in the name of said firm in his own favor for said amount, and as such secretary received said sum of money, and thereafter deposited it in another bank to his own credit, and drew checks against it as secretary of the trading company in payment of various claims against said company, which had full knowledge that the money belonged to said firm, and that the same was used and expended by said secretary in and about the business of the trading company, whereby said company became indebted to said firm in said sum, with interest thereon at said rate from September 1, 1886.

The respondent filed a reply to the new matter set forth in the answer denying the allegations therein contained regarding the amount and value of the oil delivered by the trading company to the said firm, also the amount of money alleged therein to have been received by the firm from the sales of oil and fish; denied that the firm gave credit to the company for moneys received except as alleged in the complaint; denied that there was due or owing from the firm, on account of the matters mentioned in the complaint and answer, the sum of $1,394.90 only, or any sum other than said $7,740.56; denied that the advances made by the firm for the trading company amounted to $43,907.64, or any greater sum than $32,414.34; admitted that during said period it was understood by and between the said trading company and said firm that an account current of interest charges should be kept and paid at the rate of 10 *per cent per annum*, but denied that the balance of the interest account in favor of the firm against the

company amounted to the sum of $2,601.38, or any greater sum than $649.63; denied that said "Exhibit A" was a true or correct statement of account between the company and firm, but averred that a true statement of the account was contained in an exhibit attached to the reply marked "Exhibit B"; denied the allegation in the answer that McDonald received the said $5,936.92 and deposited it and drew checks against it in payment of claims against the trading company, or that the company had knowledge or notice that it was the money or property of said firm; and also all other allegations relating to that matter.

After the issues were so formed, the court referred the case to three referees to find and report the facts and conclusions of law. The said referees, after having heard the testimony and proofs, made and filed their report wherein they found the facts put in issue by the pleadings, and as conclusions of law thereon found that the respondent was entitled to a judgment against the appellant for the sum of $1,394.90.

Upon the filing of the said report, the said appellant moved the court that judgment be entered upon the report of the referees and for judgment in his favor for costs and disbursements; and the respondent at the same time filed exceptions thereto, and a motion to set aside the said report.

Said motions and exceptions were heard by the said court, which by its decision thereafter found and decided that the report and finding of the referees were erroneous, in the following particulars: That in the said statement marked "Exhibit A" the trading company was wrongfully charged with the items for commissions upon sales of oil, under date of August 15, 1888, $10.65, $8.37, $160.44, and $10.08,—in all the sum of $189.54, and interest thereon amounting to $25.76; that in said "Exhibit A" the trading company was not given credit for the sum of $42.08 on account of fish sold, as found by the referees in their report, but for the sum of $21.25 only, while it appeared from the evidence submitted in said cause that the said firm

prior to the commencement of the action, had sold for account of said trading company fish to the amount of $64; that the trading company was entitled to credits for interest at the rate of ten *per cent per annum* upon certain drafts drawn by the said firm against consignments of oil made to them by said company, over and above the credits for interest allowed in said "Exhibit A," amounting to $1,886.22, and that as against said allowance of interest there should be charged as a proper incident of the expense account for the selling said oil, the interest charged and reserved by the consignee of said oil in Liverpool, England, amounting to $551.71; that the evidence did not support the conclusions reached by the referees; that the proceeds of the draft for $5,936.92 were received by said McDonald as secretary of the said trading company, but the court regarding the evidence sufficient to support the findings, that said moneys were applied by McDonald for the benefit of said company, confirmed it; that in said respects the findings of fact of the referees be modified, but in all other particulars they be approved and confirmed. In accordance with which said decision, it was ordered and adjudged that the respondent recover from the appellant, in addition to said $1,394.90, the additional sum of $1,607.31, with interest thereon from the commencement of the action, amounting in all to the sum of $3,195.99, together with costs and disbursements. From the part of the judgment making the additional allowance by the said circuit court, the appeal herein was taken.

*Charles H. Carey*, for Appellant.

*L. B. Cox*, for Respondent.

Thayer, C. J., delivered the opinion of the court.

The counsel for the appellant contends that a circuit court cannot properly interfere with the findings of a referee regarding any fact as to which there is a conflict of evidence, and insists that there was evidence in this case tending to prove that the said firm of Geo. Pope & Co.

was to receive five *per cent* commissions on all shipments and sales of oil and fish, and that the said circuit court should have left undisturbed the finding of fact by the referees upon that question.  He also contends that there was no evidence authorizing said circuit court to allow to the trading company credits for interest upon the certain drafts drawn by the said firm against consignments of oil shipped by the firm for said company.

The statute, section 229, Civil Code, provides as follows: "The court may affirm or set aside the report" (referring to the report of the referee before whom a trial of the issues in an action has been had) "either in whole or in part.  If it affirm the report, it shall give judgment accordingly.  If the report be set aside either in whole or in part, the court may make another order of reference, as to all or so much of the report as is set aside, to the original referees or others, or it may find the facts and determine the law itself and give judgment accordingly.  Upon a motion to set aside a report, the conclusions thereof shall be deemed and considered as the verdict of a jury."

The language of this section of the Code is too plain to be mistaken.  It authorizes the court to set aside the report of a referee under the same circumstances in which it is authorized to set aside the verdict of a jury and grant a new trial, which it may do when the verdict is against the great weight of evidence.  And in case it does set aside the report, in whole or in part, it is the duty of the court to make another order of reference, as to all or so much of the report as is set aside, to the original referees, or to others, or it may find the facts and determine the law itself and give judgment accordingly.  If the court adopt the latter course, it is its duty to find the facts and conclusions of law in the same manner it is required to do when it tries a case where a jury trial has been waived.  The court did not pursue that mode in this case, but I do not think the error is of such a nature as would authorize a reversal of its decision, as it evidently did not prejudice the rights of the appellant.  It, however, would have been

the better practice to have pursued the course indicated, and cases may arise in which it would be highly important that it should be done.

I have examined the evidence as to the amount of commissions which the said firm was to receive upon the shipment and sales of the oil and fish, and am of the opinion that the circuit court very properly made the reduction in the amount found to be due by the referees. The only testimony upon that point seems to have been that given by McDonald, and he testified that he made the arrangements himself on behalf of the firm to sell the oil at five *per cent* commission, two and a half of which was to go to R. D. Welch and two and a half to be retained by the firm. This arrangement covered the first shipments up to a certain date; that afterwards he made arrangement with Mr. Lowenberg to the effect that the trading company should pay seven and a half per cent commissions, five per cent of which was to be retained by the said firm of Pope & Co. The referees allowed five per cent commissions on all oil sold, and the circuit court only made the reduction in accordance with the arrangement as testified to by said witness.

It is claimed that McDonald, in making out a statement of the accounts between the trading company and the firm, charged the five *per cent* commissions on all the sales, but this was hardly sufficient to impeach his testimony regarding the arrangement made with Lowenberg, nor does the testimony of Pope contradict that of McDonald's in regard to the said arrangement.

The finding of the court that the trading company should have credit for the sum of $43.08 on account of fish sold by the firm of Geo. Pope & Co. instead of $21.25, as found by the referees, involves so slight a difference that the counsel for the appellant expressed at the hearing a willingness to waive any point regarding it. The decision of the circuit court, however, that the trading company was entitled to credits for interest upon the certain drafts referred to, does not seem to be supported by allegations, finding or proof.

It could not have been claimed by the respondent in the complaint, as the balance of the entire accounts between the company and the firm claimed by it was only $7,740.56, which evidently did not include a credit of $5,936.92, the proceeds of the draft for that sum drawn by the firm against certain consignments of oil. That the firm should have credit for the amount of said draft was the main contention between the parties to the action; and the referees found that issue in favor of the appellant, which finding the circuit court substantially confirmed. By giving the firm that credit, the claim of the respondent only amounted to $1,603.64, the difference between the $7,740.56 and the $5,936.92, which was subject to a further reduction for interest charged in favor of the trading company upon the money drawn. The appellant admitted in the answer an indebtedness of the firm to the trading company of the sum of $1,394.90, to which should have been added the $189.54, the overcharge for commissions upon the shipment and sales of the oil.

The real difference, therefore, in the accounts between the parties as claimed by them in the pleadings, after being adjusted in the respects above mentioned, was very small. The circuit court, however, increased it several hundred dollars by deciding that the trading company was entitled to credits for interest upon the drafts referred to. This allowance apparently was on account of a matter which was not legally in controversy between the parties, as it did not in fact constitute any issue in the case. There was no evidence concerning it, except that Pope & Co., after making shipments of the oil, and after having made advances to the trading company on account thereof, drew against the consignments and negotiated the drafts so drawn at the city of Portland. They did this in eight instances, but did it upon their own account and by pledging their own credit. It is true that they attached the bills of lading to the drafts negotiated, which became collateral security in the hands of the holders of the drafts. They were entitled to do that, and I cannot see that it gave

the trading company any right to claim interest on the money so obtained. Pope & Co. had no authority to pledge the oil for the payment of the drafts, but they had a lien upon it constituting a special property interest, to the amount of the advances made by them to the trading company, which they had a right to pledge for their own use. Colebrooke on Collateral Securities, §§ 407, 408.

The decision of the circuit court allowing interest on said draft must, therefore, be reversed, and the judgment rendered by said court be so modified that the respondent recover of the appellant the said sum of $1,394.90, found due by the referees, the further sum of $189.54, the rebate upon the commissions as charged by the firm of Pope & Co., with $25.76 interest on said last-mentioned sum, also $42.75, the price of the fish sold by said firm in excess of the amount found by the said referees,—amounting in all to the sum of $1,652.95, together with interest thereon at the rate of ten *per cent per annum* from the time of the commencement of the action.

The case will, therefore, be remanded to the said circuit court with directions to enter judgment as herein provided, with costs and disbursements, in favor of the party legally entitled to recover the same. Each party to pay their own costs and disbursements incurred in this court, and neither will be entitled to recover costs or disbursements from the adverse party.