## LIEBE v. NICOLAI.
### (48 Pac. 172.)

1. CONCLUSIVENESS OF FINDINGS ON APPEAL.—A finding of fact by a trial court in a law action will not be disturbed on appeal if there is any evidence to support it: *Williams* v. *Gallick*, 11 Or. 337; and *Bartel* v. *Mathias*, 19 Or. 483, approved and followed.

2. LANDLORD AND TENANT—"FUTURE ERECTIONS AND ADDITIONS."— Dynamos and other electrical machinery placed in a leased building for the purpose of furnishing power for an electric light system are not "erections or additions" to the leased premises, within the terms of the lease requiring erections and additions thereon to be surrendered with the premises to the landlord on the termination of the lease; that expression is limited to new buildings erected or additions made to old structures, and does not refer to chattels or trade fixtures brought onto the leased premises by the tenant.

3. LANDLORD AND TENANT—LEASE—PAYMENT OF RENT.—A clause in a lease requiring the rent to be paid "in monthly payments," the first to be made on the first day of the term, does not require payment in advance for each succeeding month; and a forfeiture of the lease cannot be declared by the lessor for a failure to pay in advance for a subsequent month.

4. EFFECT OF SETTING ASIDE REPORT OF REFEREE.—A trial court, in an action at law, has the same control over a report of a referee that it has over the verdict of a jury, and its power to set aside such report extends to all the causes prescribed by statute for setting aside the verdict of a jury; and, where a trial court sets aside the report of a referee, in an action at law, and makes new findings, under section 229 of Hill's Code, providing that in such case the court may make another reference, or "may find the facts and determine the law itself," its findings of fact, though based on the evidence reported by the referee, are entitled to every presumption in their favor that would arise if made on an original trial by the court, and will not be reviewed on appeal when supported by any evidence: *Merchants' Nat. Bank.* v. *Pope,* 19 Or. 35, criticised and explained.

5. POWER OF THE SUPREME COURT TO MODIFY JUDGMENTS AT LAW.— The supreme court may differ from a trial court on the conclusions of law to be deduced from a given state of facts, in a law action, and thereupon remand the case with instructions to modify the judgment (see *Nodine* v *Shirley,* 24 Or. 250; *Grant* v. *Paddock,* 30 Or. 321 ; and *Mitchell* v. *Holman,* 30 Or. 287 ); but it cannot review questions of fact in such cases, except to ascertain whether the findings are supported by any evidence.

From Multnomah:   HARTWELL HURLEY, Judge.

Action at law for the possession of certain personal property. Plaintiff claims under a chattel mortgage given by the owner, while defendants insist that the machinery became attached to the freehold and could not be moved. The trial court held otherwise, reversing the referee, and defendants appeal.

                                          AFFIRMED.

For appellants there was a brief over the name of *Nicholas & Davis,* with an oral argument by *Mr. H. B. Nicholas.*

For respondent there was a brief over the names of *Schuyler C. Spencer* and *McDougall & Jones,* with an oral argument by *Mr. Spencer.*

Opinion by MR. CHIEF JUSTICE MOORE.

This is an action by Theodore Liebe against Louis Nicolai and Theodore Nicolai, to recover the possession

of certain barber shop furniture and electric-light machinery, the plaintiff claiming the same by virtue of a chattel mortgage thereon, executed by one Eugene Stebinger, while the defendants claim title and right of possession of the furniture under a sale thereof upon execution, and the machinery by reason of its character as fixtures placed upon their premises by Stebinger, and not removed during the term of his lease thereof. The cause being at issue, was, by consent, referred to Wallace McCamant, Esq., who took and reported the evidence, and found therefrom that plaintiff had a right to the possession of the furniture, and defendants to the machinery. The court affirmed the referee's findings in relation to the furniture, but set them aside as to the machinery; and, having made findings of its own, to the effect that plaintiff was entitled to the latter class of property also, gave judgment for the return of all the property, or, if the same could not be had, for the value thereof, from which the defendants appeal.

1. The record discloses that on April 6, 1894, the defendants commenced an action in the Justice's Court of North Portland Precinct against Eugene and Mary B. Stebinger, to recover the sum of $200, and on that day had said furniture attached in the action as the property of the Stebingers, and, having thereafter obtained a judgment for the amount demanded, caused an execution to be issued thereon, in pursuance of which the furniture so attached was sold to the defendants. On April 7, 1894, the plaintiff filed in the proper office a chattel mortgage upon all said property, which counsel for the defendants contend was fraudulent as to the creditors of Stebinger, claiming that it was executed on the day it was filed, but falsely dated as of the 4th of that month, and that the referee and court erred in failing to so find. It is a sufficient answer to say that the record shows there was evi-

dence to support the finding that the chattel mortgage
was duly executed on April 4, 1894, for a valuable consid-
eration, and recorded within five days thereafter, and, this
being so, this court cannot inquire into the correctness of
the finding of fact so made by the trial court upon the
issue before it: *Williams* v. *Gallick*, 11 Or. 337 (3 Pac. 469);
*Bartel* v. *Mathias*, 19 Or. 482 (24 Pac. 918). ·

The evidence also shows that the defendants are the
owners in fee of the Merchants' Hotel Building in the
City of Portland, and a brick store in the same block, both
of which were demised to one Jacob Haas by separate
agreements, the latter for the term of four years from
January 1, 1892, at the monthly rental of $75, the first
installment thereof payable on the first day of the term,
the lessee covenanting to deliver up the premises at the
end of the term, "and all future erections and additions
to or upon the same," and that, if the rent should be in
arrear for the space of thirty days, the lessors might enter
upon the premises and repossess the same as of their
former estate.   Haas assigned this lease to Eugene and
Mary B. Stebinger, and Stebinger placed in the store an
electric-light plant, consisting of a boiler and engine, three
dynamos, two rheostats, two ampere meters, one volt
meter, one lighting dynamo, and the necessary tools, and,
having extended a system of wires from the dynamos, fur-
nished electric lights to be used in said hotel and other
buildings in the north part of the city.   On February
19, 1894, Stebinger, being indebted to the defendants in
the sum of $2,780, on account of rent of the premises up
to the first day of the next month, executed to them a
chattel mortgage on certain property in the hotel, to
secure the payment of the amount so due, and on April
4 of that year executed the mortgage above mentioned
to plaintiff, which includes with other property all the
electric-light plant, except the boiler and engine; and,

having made default in the payment of the amount secured by the latter mortgage, the plaintiff attempted to take possession of the mortgaged property and remove it from the store, but, being prevented from so doing by the defendants, instituted this action for the recovery thereof. Counsel for the defendants contend (1) that under the agreement to surrender "all future erections and additions to or upon the same," with the premises, upon a termination of the lease, the title to the property in question, as a matter of law, became vested in their clients, as soon as the machinery was attached to their building; (2) that on April 1, 1894, the rent of the premises being in arrears more than thirty days, and the landlords having thereupon declared a forfeiture of the term, if the machinery be considered as trade fixtures, the termination of the lease vested the title to this property in the defendants; and (3) that the referee having found that in March, 1894, Stebinger surrendered 'the possession and lease to the defendants, the court erred in setting aside such finding, and making one for itself to the effect that the tenant did not, during that month nor at any time prior thereto, surrender the same to the defendants, nor did they take possession thereof, and for these reasons the judgment should be reversed. We will consider the points contended for in the order of their arrangement.

2. Gray, C. J., in *Holbrook* v. *Chamberlin*, 116 Mass. 155 (17 Am. Rep. 146), in construing a similar clause contained in a lease, says: "The right of a tenant to remove trade fixtures may doubtless be qualified by the covenants in the lease. But we are of the opinion that the covenant to deliver up in good order 'all future erections or additions to or upon the premises is limited, in purpose and effect, to new buildings erected or old buildings added to, putting such erections and additions upon the same footing, in respect of the obligation to keep in repair, as the

buildings upon the premises at the time of the execution
of the lease; and cannot be extended so as to deprive the
tenants of the right to remove trade fixtures, much less
personal property, put by them upon the premises during
the term.' The harsh doctrine of the common law, in
relation to the respective and reciprocal rights, duties,
and obligations of a landlord and tenant, has been very
much ameliorated by modern adjudications, and it is now
universally conceded, in enlightened countries, that the
tenant has risen above the relation of a mere vassal to his
lord, and now enjoys many privileges heretofore denied
him. Among these may be classed the right to remove
during the term of his lease all trade fixtures annexed to
the demised estate, and, in the absence of any stipulation
to the contrary, he may also remove, during the same
period, erections and additions made by him upon the
premises which hitherto had been considered paramount
fixtures. In view of this modern doctrine, as announced
in the opinion just quoted, we cannot think the dynamos
and other electric-light machinery are to be classed as
erections or additions made to or upon the leased premises,
and hence the defendants' claim to the same under this
clause of the lease is without merit.

3. The proposition that the term was forfeited by
reason of the rent being in arrears for more than thirty
days is predicated upon the theory that the several install-
ments thereof were payable monthly in advance. The
clause of the lease from which it is claimed this fact is
made manifest is as follows: "And the said lessee, for him-
self, executors, and administrators, does hereby covenant
to and with the said lessors, their heirs, and assigns, to
pay the said rent in monthly payments of $75 each, the
first payment thereof to be made on the 1st day of Jan-
uary, 1892." It will be remembered that the first install-
ment of rent became payable on the first day of the term,

but, there being no contract that the other payments
were to be made in advance, can it be said, from an inspec-
tion of the lease, that such a construction was contem-
plated by the parties to it?  The rule seems to be well set-
tled that when the lease contains no covenant fixing the
time when the rent shall become due, it is payable at the
end of the term:  *Boyd* v. *McCombs,* 4 Pa. St. 146; *Garvey*
v. *Dobyns,* 8 Mo. 213; *Ridgley* v. *Stillwell,* 27 Mo. 128;
*Duryee* v. *Turner,* 20 Mo. App. 34; *Bordman* v. *Osborn,* 23
Pick. 295; *Dixon* v. *Niccolls,* 39 Ill. 372 (89 Am. Rep. 312).
In *Menough's Appeal,* 5 Watts. & S. 432, premises were
leased for one year, no time being specified for the pay-
ment of the rent, and in an action to recover the same
it was held not to be payable until the end of the term.
SERGEANT, J., in rendering the decision of the court, says:
"No time being stipulated for the payment of rent, it was
by law payable at the end of one year, and not before,
rent being in its nature a reditus or return for the enjoy-
ment of the annual profits of the land."  In *Holland* v.
*Palser,* 2 Starkie, 161, a house had been demised for a
term of twelve calendar months, at the yearly rent of
eighty pounds, three months' rent to be paid in advance
on taking possession.  The tenant having paid the rent
for two quarters, an action was brought by the landlord
to recover the amount due for the third quarter before
it had expired, and the question presented was whether,
under the terms of the agreement, the rent for the third
quarter had accrued before the action was commenced.
Lord ELLENSBOROUGH, in deciding the case, held that if
it had been intended that each succeeding quarter's rent
should be paid in advance, it would have been easy to
have said "always paid in advance."  So, too, in the case
at bar, the intention of the parties must be sought for in
their agreement, and, looking to this instrument alone
for that purpose, it cannot be said that the rent, except

for the first month of the term, was to be paid in advance. Courts very much dislike, even in actions at law, to enforce forfeitures, and will do so only in cases where the parties have clearly stipulated therefor, or where the character of the property affected by the agreement seems to demand it. Such is the general rule, in view of which we are of the opinion that the rent was not payable in advance, except as to the first installment; and hence the rent for March was not in arrear thirty days on the 4th of the next month, when Stebinger executed the mortgage.

4. This brings us to a consideration of the statute authorizing the trial court to set aside the report of a referee, and find the facts and determine the law itself, and the legal effect of a modification of the findings of the referee: Hill's Code, § 229. It may be admitted that the court's findings of fact, in an action at law tried before it without the intervention of a jury, are binding upon this court, when supported by any evidence *(Hicklin* v. *McClear,* 18 Or. 126, 22 Pac. 1057); but when the court, upon a conflict in the evidence, sets aside the referee's findings, and makes its own, the question is involved whether any judgment given thereon is subject to review on appeal as to the facts. In *Merchants' Nat. Bank* v. *Pope,* 19 Or. 35 (26 Pac. 622), THAYER, C. J., in speaking of the power conferred by this section, says: "It authorizes the court to set aside the report of a referee under the same circumstances in which it is authorized to set aside the verdict of a jury and grant a new trial, which it may do when the verdict is against the great weight of evidence." The language here quoted would seem to be a limitation upon the power of the court, prohibiting it from setting aside the findings of a referee except in cases where the conclusions of fact reached by him appear to be against "the great weight of evidence." It is provided by section 229 of our Code

that the conclusions of a referee upon a motion to set aside his report are to be deemed and considered as the verdict of a jury, and the statute prescribes the causes which, on the motion of the party aggrieved, authorize the court to set aside the verdict of a jury and grant a new trial: Code, § 235. From this it would appear that the power of the court to set aside the findings of a referee is not limited to a question as to the sufficiency of the evidence to justify the conclusion reached by him, but, in our judgment, extends to all the causes prescribed by the statute for setting a verdict aside; and, if the referee's findings were, by statute, made special verdicts upon the issue, instead of being deemed and considered as such, the power of the court to set them aside could not be questioned, and its action in doing so would not be reviewed on appeal, except for an abuse of discretion; and hence the question is narrowed to a consideration of the legal effect of the court's modification of a referee's finding. If the court, upon setting aside such a report, took the evidence anew, and found therefrom the facts, and determined the law itself, a judgment given thereon, supported by any evidence, ought not, on principle, to be subject to review on the facts; but when the court, from a mere examination of the evidence taken and reported by the referee, reaches a conclusion different from that officer, it may be conceded that the variance is not the result of superior advantages possessed by the court, for it does not possess the opportunity afforded the referee of seeing the witnesses as they appeared upon the stand, or of observing their tone, manner, and bearing while giving their testimony. It might appear to us, from the examination of a bill of exceptions, that the findings of fact made by the trial court were opposed by the great weight of evidence, yet by reason of its intimate knowledge of the parties, and its ability to note the peculiarities of the wit-

nesses, which can never by any means be made a part of
the record, its conclusions of fact must necessarily be pre-
sumed to have been carefully reached.   It is the applica-
tion of this rule that prompts the trial court to affirm
the report of a referee, although it might have reached
a different conclusion from an examination of the evidence
reported; but to say that the findings of fact made by a
referee are entitled to greater consideration than the con-
clusions reached by the trial court, after an examination
of the evidence, is to concede that, while the court pos-
sesses power to set aside such report, its action in that
respect is nugatory on appeal, unless its findings are sup-
ported by a preponderance of the evidence.   Such seems
to have been the rule adopted in *Merchants' Nat. Bank* v.
*Pope*, 19 Or. 35 (26 Pac. 622), for the learned chief justice,
in commenting upon the facts, says: "I have examined
the evidence as to the amount of commissions which the
said firm was to receive upon the shipment and sales of
the oil and fish, and am of the opinion that the Circuit
Court very properly made the reduction in the amount
found to be due by the referees." The effect of such a
rule, if applied to an appeal from a judgment in an action
at law in which the court had set aside the findings of
a referee, and reached conclusions of its own from a mere
inspection of the evidence reported, would be to deprive
the findings of the court of all presumptions of regularity
which may be invoked in their favor, and the cause would
come here for trial de novo, as in equity cases.

5.   While we may arrive at conclusions of law different
from those reached by the trial court, and thereupon re-
mand the cause for correction in this respect, and with
directions to modify the judgment in accordance there-
with *(Nodine* v. *Shirley*, 24 Or. 250, 33 Pac. 379; *Grant* v.
*Paddock*, 30 Or., 47 Pac. 712), we know of no rule permit-
ting this court, in an action at law, to make findings of

fact, or to give a judgment thereon, and hence it is power-
less to try such a case de novo. It is true, we may con-
clude that there is no legal evidence in the record to sup-
port the judgment, and for that reason, as a matter of law,
reverse it; but, upon doing so, the cause must be re-
manded for retrial or other proceedings in the court below.
Now, since an action at law cannot be tried de novo, it fol-
lows that the effect of the rule is not, as it would seem
from the opinion in *Merchants' Nat. Bank* v. *Pope,* and the
trial court not only possesses the power to set aside the
report of a referee, but upon doing so its findings of fact,
although derived from an inspection of the evidence so
reported by the referee, is, in our judgment, a new trial
by the court, and, as such, the findings so made are entitled
to every intendment and presumption that could be in-
voked in their favor if made upon an original trial by the
court. To reach a different conclusion would be equiva-
lent to holding that the trial court, on setting aside the
findings of a referee, must hear the testimony, and take
the evidence anew, before it could reach a finding of fact
of its own; and, as the statute has not prescribed such a
mode, we cannot think a procedure of this kind necessary
in order to give to the findings and judgment that pre-
sumption of regularity to which it is entitled, and must,
therefore, hold that the duty of the referee is to advise the
court, when so ordered, but that the power appointing
him may disregard his counsels, and make its own conclu-
sions from the evidence submitted. Having reached this
conclusion, it only remains to be said that, while the evi-
dence is conflicting upon this subject, there is, neverthe-
less, some testimony that tends to support the court's
findings, to the effect that Stebinger has not abandoned
the premises, or surrendered his interests in the lease to
the defendants, at the time the mortgage was executed;
and, as the court further finds that the dynamos and other

machinery are trade fixtures, the removal of which would not injure the freehold or the building thereon to which it is attached, it follows that the judgment is affirmed.

AFFIRMED.