Argued December 7, decided December 28, 1909.

## COURTNEY *v.* BRIDAL VEIL BOX FACTORY.

[105 Pac. 896.]

APPEAL AND ERROR—FINDINGS BY COURT—REVIEW.

1. Under Section 159, B. & C. Comp., providing that the findings of the court on the facts shall be deemed a verdict, findings without a jury must be accepted on appeal, where based on conflicting evidence, though the appellate court might have arrived at a different conclusion.

FRAUDS, STATUTE OF—"CONTRACT FOR THE SALE OF GOODS"—GOODS TO
BE MANUFACTURED.

2. A contract for the sale of articles then existing, or such as the seller, in the ordinary course of business, manufactures or procures for the general market, whether on hand at the time or not, is a "contract for the sale of goods" to which the statute of frauds applies; but, if the goods are to be manufactured on a special order, and not for the general market, the agreement is not a contract for the sale of goods within the statute.

FRAUDS, STATUTE OF—MANUFACTURE OF GOODS—FINDINGS.

3. In an action for breach of a contract for the manufacture of boxes, evidence *held* to sustain findings that the boxes contracted for did not exist in species at the date of the contract; that they were not such as defendant box factory ordinarily produced in the ordinary course of business, but was a special order for a special purpose, and that the agreement was therefore not within the statute of frauds.

From Multnomah:   THOMAS O'DAY, Judge.

Statement by MR. JUSTICE MCBRIDE.

The complaint in this action alleges that on the 21st day of January, 1907, plaintiff entered into an oral contract with the defendant Bridal Veil Box Factory, whereby the said defendant promised, within a reasonable time thereafter, to manufacture and deliver to plaintiff 50,000 oil cases of the following dimensions and specifications: "Inside measure $19\frac{1}{4}$ x $9\frac{5}{8}$ x $14\frac{1}{2}$. Ends, 7-8 inch, S. 2 S. Sides, 3-8 inch, S. 1 S. 2 pcs. T. & B., 3-8 inch, S. 1 S., 1 pc. tops, 1 pc. bottoms. Some 2 pc. bottoms allowed. Ends to be made of fir"—at and for the price of $12 per hundred, f. o. b. Martin's Dock, Portland, Oregon. That about April 23, 1907, the defendant Box Factory sold all its property, including the contract in question, to the defendant, Bridal Veil Lumbering Company, and as a part of the consideration of said sale the Lumbering Company agreed with the other defendant that it would complete and carry out all its agreements, including the contract sued upon. That the defendants have wholly failed to carry out said contract. That during the time defendants had the plaintiff's order for these boxes the market value of the same was $15.62 per hundred cases in Portland, and that plaintiff is damaged in the sum of $1,810.

The answer of the defendants deny the execution of the contract sued upon; deny that defendant, Bridal Veil Lumbering Company took over said contract, or agreed to carry it out; deny that any contracts were ever assumed by the Lumbering Company, except such as were specifically mentioned in its agreement of purchase. Defendants plead the statute of frauds in bar to the alleged oral agreement. Defendants also plead a counterclaim for $1,777.44, which was alleged to be a balance due from plaintiff upon another purchase of merchandise from defendant Box Factory and by it assigned to defendant Lumbering Company.

The case was tried by the court without a jury, who found for the plaintiff against the defendant Box Factory, upon the alleged contract, in the sum of $1,810, and allowed defendants' counterclaim to the extent of $1,573.99, giving plaintiff a judgment against the defendant Box Factory in the sum of $236.11. The court further found that the defendant Lumbering Company had not assumed to carry out the contract sued upon, and gave it a judgment for costs. From this judgment, both defendants appeal.        AFFIRMED.

For appellant there was a brief over the names of *Messrs. Coovert & Stapleton* with an oral argument by *Mr. George W. Stapleton.*

For respondent there was a brief over the names of *Mr. Walter H. Evans* and *Messrs. Spencer & Farrell* with an oral argument by *Mr. Schuyler C. Spencer.*

MR. JUSTICE MCBRIDE delivered the opinion of the court.

1. Several questions of fact are discussed in the brief; but, as the evidence upon them was contradictory, we must accept the findings of the court below, even if we entertained the opinion that a different conclusion should have been reached. Though tried by the court without a

jury, yet, being a law action, the same rule must govern us in considering the findings made in the court below that would apply to a verdict by a jury. Section 159, B. & C. Comp.; *Hallock* v. *Portland,* 8 Or. 29. The contract sued upon was oral; and, if it is a contract for the sale of chattels, it is within the statute of frauds, and therefore void. If, on the other hand, it is to be construed, as a contract to manufacture specific articles upon the special order of the purchaser, and upon specifications furnished by him; and not for the general market, then the contract is not within said statute. There is probably no subject of judicial discussion which exhibits such a contrariety of opinion as the question now before us for decision. In England the tendency of the courts is to treat all contracts for the purchase of articles not in existence, but to be afterwards manufactured, as a sale of chattels, and within the statute. In *Lee* v. *Griffin,* 1 B. & S. 272, it was even held that a contract by a dentist to make a set of artificial teeth was a contract for the sale of goods, and was void because not in writing. In New York the rule is that an agreement for the sale of any commodity not in existence at the time, but which the vendor is to manufacture or put into a condition to be delivered, is not a contract for the sale of goods within the meaning of the statute. In Massachusetts a third rule is announced, to the effect that a contract for the sale of articles then existing, or such as the 'vendor in the ordinary course manufactures or procures for the general market, whether on hand at the time or not, is a contract for the sale of goods to which the statute applies. But if the goods are to be manufactured upon a special order, and not for the general market, then the agreement does not amount to a contract for the sale of goods so as to come within the statute. The three rules of construction above noted, with a full citation of authorities supporting each, are discussed in the able opinion of

Mr. Justice BEAN in *Heintz* v. *Burkhard,* 29 Or. 55 (43 Pac. 866: 31 L. R. A. 508: 54 Am. St. Rep. 777) which has become a leading case on this subject. While the learned justice in that particular case did not indicate choice between the rules laid down by the New York and the Massachusetts courts, we are of the opinion that, while the application of the latter rule, or indeed of any fixed rule, is difficult in many cases, it affords a better and fairer test of the applicability of the statute, in the great majority of instances, than either of the others. Indeed the English rule is expressly repudiated in the case of *Heintz* v. *Burkhard.* We will now proceed to apply the rule that prevails in Massachusetts and in the majority of the United States jurisdictions to the facts found in this case, bearing in mind that this court has no power to weigh contradictory testimony, if in the record there is found any testimony upon which a particular finding might reasonably have been predicated. *Hallock* v. *Portland,* 8 Or. 29; *Hicklin* v. *McClear,* 18 Or. 137 (22 Pac. 1057) ; *Hughes* v. *Holman,* 23 Or. 481 (32 Pac. 298) ; *Liebe* v. *Nicolai,* 30 Or. 364 (48 Pac. 172.)

2. The first assignment of error attacks finding No. 3, for the alleged reason that the testimony was insufficient to support a finding to the effect that a contract to manufacture and deliver to plaintiff 50,000 oil cases, of specified dimensions and construction, was entered into between plaintiff and defendant box factory. The plaintiff testified that one Aldrich, the general manager of the defendant box factory, called at his office about the 21st day of January, 1907, and told him that he had been over to see the Standard Oil Company, and found that they did not want any oil cases, and asked plaintiff what was doing in oil cases, and if he could use any. They discussed prices, and as to whether the bottoms should be of one or two pieces, and whether the ends should be of fir, and plaintiff then told Aldrich that he could use fir·

ends, and that he wanted one piece tops and bottoms, but that he would accept some two piece bottoms. Aldrich then named a price of 12 cents each, delivered in Portland at Martin's Dock, and, when the other details had been settled, Aldrich agreed to ship plaintiff 50,000 cases. Plaintiff thereupon, in the presence of Aldrich, had his bookkeeper enter the order on the book under the title of "Order 161." The order, as it appeared upon the book was as follows: "Portland, Oregon, January 21, 1907:   50,000 ⅖ gallon oil cases, $12.00 f. o. b. dock, Portland. Inside measure 19¼x9⅝x14½. Ends ⅞" S. 2 S. Sides ⅜", S. 1 S., 2 pieces. T. & B. ⅜", S. 1 S. 1 piece tops, 1 piece bottoms. Some 2 piece bottoms allowed. Ends to be of fir." Plaintiff also testified that on the same day he wrote a letter to the defendant box factory embodying said order in the same terms as above, except that there was added to the terms the sentence, "shipment to be made as soon as possible." Witness testified that the Standard Oil Company's case was 14½x9⅝x21. 2 piece ⅜x14½x21 sides and 2 piece ⅜x10⅜x21 tops and bottoms and one piece ⅞x⅞x21 bracing stick; that the Standard Oil people would not accept boxes with fir ends, but required them to be all pine or all spruce; that the factories did not usually carry oil cases in stock, but contracted each year for a certain number and thereafter saved the stock to fill the orders; that the Standard Oil Company was the principal buyer of oil cases in the Oregon market; that the use of fir ends was contrary to the usual demands of trade in oil cases; that he bought these cases to supply an order from the Raymond Box Company of Raymond, and was unable to fill said order on account of the default of the defendant box factory. His bookkeeper corroborated his testimony as to the making of the original contract, which was denied by Aldrich, who testified that he took the order only tentatively and with the understanding that he

would find out whether he could obtain the necessary lumber out of which to manufacture the boxes, and that if it could be obtained the company would make them, but asserted that he never accepted the contract, and that a few days afterwards he called upon the plaintiff and informed him that it was impossible to get the lumber, and plaintiff told him that it was all right.· Plaintiff denied the conversation. Plaintiff's books and evidence indicated a complete oral contract, and the testimony of Aldrich, supplemented by the fact that no memorandum, contemporaneous with his first interview with plaintiff, appeared on defendant's books, would seem to indicate that Aldrich never considered that he had entered into a complete contract with plaintiff. It would seem hardly probable on the face of the transaction that Aldrich would make a contract to furnish several thousand dollars' worth of goods and utterly fail to enter the transaction in some form upon the books of his company; but, in view of the direct conflict in the testimony, that question was for the court below to decide, and we must assume the correctness of the finding. If there was a contract at all to furish these boxes,.it was a contract primarily to manufacture them. Aldrich admits that the conversation in regard to the matter which took place between him and the plaintiff related to the making of the boxes by his company, and gives, as a reason for his not closing up the· contract at the time of the interview, that he wished first to ascertain whether his company could get the necessary lumber. So we cannot say that the finding is unsupported by evidence, and it must stand.

. 3. The eighth finding of fact is as follows: "That the contract entered into by said plaintiff with said Bridal Veil Box Factory was a contract concerning personal property which did not at the time exist in specie, and for work and labor to thereafter be performed, and that at the time said contract was entered into the said defendant

Bridal Veil Box Factory did not have the material on hand, and did not own the material necessary to make up said oil boxes; that in order to fulfill said contract so entered into as aforesaid the said Bridal Veil Box Factory would have had to purchase the materials therefor from other parties, and that said contract was not a sale of personal property, and that said oil cases contracted for as aforesaid were not such as the said Bridal Veil Box Factory ordinarily produced in the course of its business, but that said contract above set out was a special order for a special purpose, and that said oil cases were not the standard regulation size of oil cases such as is ordinarily, generally, and usually manufactured by and kept on hand at the factory of the said Bridal Veil Box Factory, at Bridal Veil, Oregon, for sale in the general market." The testimony upon which this finding is made was conflicting. On behalf of the defendant there was testimony tending to show that the goods ordered were substantially identical with those used by several oil companies and firms, and that they were kept in stock in small quantities by several factories in and about the city of Portland, including the defendant box factory, and had at least a limited market. The plaintiff introduced testimony, however, from which the court had a right to find as it did, and we are not at liberty to disregard said finding. *Liebe* v. *Nicolai*, 30 Or. 364 (48 Pac. 172.) Accepting therefore, as we must, the finding of the lower court as correct, it must be held that the boxes called for in the contract did not exist in specie at the date thereof; that they were not such as the defendant box factory ordinarily produced in the regular course of its business, but that the contract for their manufacture was a special order for a special purpose, and that the goods were not such as were usually kept on hand or regularly manufactured by the said defendant for general sale in the market; that it was not possible for the plaintiff to have procured boxes of this

character in any considerable quantity in the open market, and therefore could not have filled his order from other sources.

Counsel for defendants lay much stress upon the fact that no special skill was required in the manufacture of these boxes, and it is hardly probable that the plaintiff was contracting with defendant on account of such skill. Anybody with skill enough to saw, dress and match boards could construct a box such as plaintiff ordered of defendant. The supposed facilities of defendant for producing these boxes in large quantities and within a short period, probably cut more figure in inducing plaintiff to give it an order than the question of special skill in the proposed work.

We have not discussed the various and conflicting decisions of other courts on the general subject here involved. They will be found cited in Smith, Fraud, and are discussed in the very able opinion of Mr. Justice BEAN in *Heintz* v. *Burkhard,* 29 Or. 55 (43 Pac. 866; 31 L. R. A. 508: 54 Am. St. Rep. 777.)

Applying what is termed the Massachusetts rule, which we adopt as the one applicable in this State, to the facts found by the court below, we conclude that the contract sued upon is not within the statute of frauds.

We are also of the opinion that the court adopted the correct measure of damages in this case, and the judgment is affirmed.      AFFIRMED.