374        PACIFIC LUMBER CO. *v.* PRESCOTT.     [40 Or.

Argued 18 December, 1901; decided 13 January, 1902.

## PACIFIC LUMBER COMPANY *v.* PRESCOTT.

[67 Pac. 207.]

POSITION OF ONE CONTRACTING WITH A RECEIVER.

1. Persons making contracts with receivers or bidding at receivers' sales thereby subject themselves to the jurisdiction of the court that appointed the receiver, and become entitled to notice and a hearing on matters affecting their rights.

RIGHT TO ANNUL A RECEIVER'S CONTRACT.

2. Where a receiver contracts to sell property, and the buyer, with the assent of the receiver and the approval of the court, assigns the contract to a third person who stipulates to carry out all the terms of the contract, the latter becomes a party to the proceeding in which the receiver was appointed, and subjects himself to the jurisdiction of the court, so as to be bound by an order afterwards rendered annulling the contract.

CONSTRUCTION OF A CONTRACT OF SALE.

3. A contract for the sale of a certain quantity of lumber at a stipulated price per thousand provided that if either party breached the contract it should be void, and for the purpose of estimating the amount due in case of partial performance a certain higher rate per thousand was agreed on. The title of the lumber was to vest in the buyer as fast as paid for. *Held,* that though title vested in the buyer as payments were made, and before delivery, it only attached to such a quantity, in case of a breach, as could be secured by the payment of the higher rate agreed on.

DEFAULT IN COMPLIANCE WITH CONTRACT.

4. A receiver, having contracted to sell a certain quantity of lumber, of different grades, at a uniform price; a higher price to be charged in case of partial performance and breach; payments to be made at stated intervals,— cited the buyer to show why the contract should not be annulled for non-payment of an installment, and the court gave him ten days in which to make the payment. *Held,* that the fact that the buyer, before expiration of the ten days, ordered the receiver to deliver the cheaper grade of lumber, which was refused, did not excuse him from his default, and throw the default on the receiver, since, if this were so, the buyer could claim the best quality, as well as the poorest, and secure it at the uniform price, to the extent of the advance payments made by him,'despite his default.

APPEAL—POWER TO DIRECT A PARTICULAR JUDGMENT.

5. On appeal from a judgment in a law action tried before a judge alone, the supreme court may remand the case with a direction to enter a particular judgment, if all the facts have been found; but if no finding has been made on a material point, the case must go back for a new trial.

From Multnomah: ARTHUR L. FRAZER, Judge.

Action by the Pacific Export Lumber Company against A. Prescott and others. From a judgment for plaintiff, defendants appeal.                              REVERSED.

For appellants there was a brief over the name of *Chamberlain, Thomas & Kraemer,* with an oral argument by *Mr. Geo. E. Chamberlain.*

For respondent there was a brief over the name of *Williams, Wood & Linthicum,* with an oral argument by *Mr. Geo. H. Williams.*

MR. JUSTICE MOORE delivered the opinion.

This is an action to recover the sum of $788.74. It is alleged in the complaint that on December 1, 1896, John Gruber, as receiver of the Capital Lumbering Company, a corporation, entered into a contract with R. D. Jones whereby he sold to the latter a quantity of lumber, supposed to contain about 1,000,-000 feet, and known as "merchantable and better quality," then near Winlock, Washington, for the sum of $3.60 per thousand, on account of which $500 was then to be advanced, and a like sum to be paid on the first of each month thereafter until the value thereof was fully paid, and Jones was also to pay the expense incurred in planing and kiln-drying such part of the lumber as he might order dressed or dried; that, on the day said contract was entered into, Jones, with Gruber's consent, assigned all his interest therein to plaintiff, a corporation, which paid the several installments to and including April, 1897, amounting to $2,500; that on July 7, 1897, plaintiff had received lumber of the value of $750.07, and incurred an expense of $314.89 for planing and kiln-drying, leaving due it from Gruber 398,621 feet, which it on that day sold to the defendants, A. Prescott, J. A. Veness and L. J. Furber, partners as Prescott, Veness & Company, at $3.60 per thousand, to whom Gruber, prior to October —, 1897, delivered 179,527 feet, of the value of $646.30, and thereafter 219,094 feet thereof at the contract price of $788.74, no part of which latter sum has been paid.

The answer denied the material allegations of the complaint, and, for a separate defense, averred that the defendants in July, 1897, entered into a contract with plaintiff whereby they

agreed to purchase all the "merchantable and better quality" of lumber which it then owned near Winlock, Washington, at $3.60 per thousand, to be inspected and delivered to them by Gruber, from whom they received prior to October 18, 1897, 179,527 feet, of the value of $643.30, which sum they paid plaintiff, whereupon it refused to deliver to them any more lumber under the terms of its contract. For a second defense, it is alleged that plaintiff ought not to be permitted to aver that after October —, 1897, the defendants received any lumber on its account, or that they owed it $788.74, or any sum, for that one Ida Hining having commenced a suit in the superior court for Lewis County, Washington, against the Capital Lumbering Company, a corporation, Gruber was appointed receiver thereof; that, having duly qualified as such, he on December 1, 1896, entered into a contract with R. D. Jones, which he on that day, with Gruber's consent, assigned to plaintiff, which agreed to keep and perform the terms and conditions thereof; that, plaintiff having neglected to pay the installment of $500 maturing May 1, 1897, Gruber on June 3 of that year filed a report in the court and cause in which he was appointed receiver, praying that a citation issue requiring plaintiff to show why its contract with him should not be forfeited by reason of the failure to comply with the terms thereof; that, a citation having been issued, plaintiff's attorney, in response thereto, filed an answer controverting the material averments of the petition, and alleging that, by reason of the lumber falling far below the estimated quantity plaintiff had paid for nearly all the specified quality that could be secured under the contract, which ought not to be canceled; that the court on June 23, 1897, upon the issue thus made, found that the "merchantable and better lumber" remaining was of the value of between $1,300 and $1,500, and decreed that plaintiff pay the installment of $500 within ten days therefrom, or that in default thereof the contract be declared forfeited by the receiver, and that, no part of said sum having ever been paid, the decree of forfeiture became final; that thereafter proceedings were instituted in the Supreme

Court of Washington by that state, upon the relation of plaintiff herein, against the judge of said superior court and Gruber, reciting the facts involved in said petition and answer, and the decree based thereon, whereupon an alternative writ of prohibition was issued, but, a demurrer thereto having been sustained October 15, 1897, the proceeding was dismissed; that the superior court for Lewis County, Washington, and the supreme court of that state are courts of general jurisdiction, and said proceedings had therein were duly conducted according to the laws of that state and the rules of said courts, and that the contract mentioned in such proceedings is the agreement referred to in plaintiff's complaint; that the only lumber plaintiff was entitled to under said contract and the decrees of said court was 179,527 feet, which quantity the defendants received and paid it therefor, and that any other lumber secured by them after October 18, 1897, was received from Gruber, with whom they settled therefor.

The reply denied the material allegations of new matter in the answer, and averred that the defendants ought not to be permitted to allege that they received only 179,527 feet of lumber from the plaintiff, for, in answer to a request for a statement, they wrote to plaintiff on November 4, 1897, that prior to October 19 of that year they had received 181,000 feet, and six days thereafter 80,000 feet. The reply admits that said proceeding were had in the superior court for Lewis County, Washington, but denies that such court had power to require the payment of any part of the installment maturing May 1, 1897, or to declare a forfeiture of the contract in case of the nonpayment thereof, or that said decree had become final or binding upon plaintiff.

A trial was had without the intervention of a jury, and, the plaintiff having introduced its evidence and rested, the defendants moved for a judgment of nonsuit, which being overruled, and an exception allowed, they introduced their testimony, whereupon the court found the facts in accordance with the allegations of the complaint, except that plaintiff had rendered defendants a statement of account, claiming for the

lumber received after October 19, 1897, only the sum of $758.74, for which judgment was given, and defendants appeal.

It is contended by defendants' counsel that Jones having assigned his interest in the contract for the purchase of the lumber to plaintiff, which agreed to keep and perform his engagements, and such transfer having been consented to and ratified by the receiver and approved by the court, plaintiff thereby became a party to such contract, and subjected itself to the jurisdiction of the court, which was authorized to compel it to fulfill its obligations, or for a failure thereof to declare the contract forfeited, and, the court having done so, its order evidencing the exercise of such power became final; that this action is a collateral attack on such judgment; and that, these facts having been disclosed by plaintiff's evidence and the admissions in the pleadings, an error was committed in overruling the motion for a judgment of nonsuit. The evidence introduced at the trial shows that Ida Hining having commenced a suit in the superior court for Lewis County, Washington, against the Capital Lumbering Company, a corporation, John L. Gruber was appointed receiver thereof, who on December 1, 1896, entered into a contract with R. D. Jones by the terms of which he agreed to sell and deliver to the latter all the "yard stock," commonly known as "merchantable and better quality," of lumber, supposed to be 1,000,000 feet, then on the mill yard and dock and in the sheds and kiln of the Capital Lumbering Company at Winlock, in said state, and also such further quantity of yard stock as might be manufactured in the ordinary operation of said corporation's mill, in cutting the remainder of a cargo of lumber for a ship then lying at Kalama, in said state; Jones agreeing to take the whole thereof and promising to pay therefor $3.60 per thousand feet free on board the cars at Winlock, and also to pay such additional cost as might thereafter be incurred at his request in dressing and drying any part thereof; $500 to be paid down and a like sum payable on the first day of each month thereafter until the whole sum due for said lumber, as

well as for the dressing and drying thereof, was paid; no time having been specified in which the lumber was to be removed.

The said agreement, in which Gruber and Jones are denominated parties of the first and second parts, respectively, contains the following stipulation: "Provided, and it is hereby expressly understood and agreed, that the party of the first part shall not, under this contract, be required to deliver at any time any quantity or portion of said lumber in excess of the amount of lumber then fully covered by payments theretofore made to him by said party of the second part or his assigns; and for the purpose of ascertaining whether or not any required shipment of said lumber would be in excess of the amount covered by all payments which may theretofore have been made, the value of all prior shipments made hereunder shall be estimated by the current market prices of lumber of grades similar to the grades included in such prior shipments as disclosed by the invoices thereof, and not by the average rate of $3.60 per thousand feet hereinbefore mentioned. Should the party of the second part or his assigns desire and order shipments of lumber to be made more rapidly than the monthly payments herein specified would fully cover on the basis of reckoning above provided, the said party of the second part hereby promises and agrees to and with the party of the first part to pay cash upon delivery of each car load thereof at current market prices for such grades of lumber, and such payment shall be credited upon the aggregate amount due to the first party under this contract. * * * It is further mutually agreed that the failure of either party hereto to keep and perform each and every covenant and agreement herein agreed to be kept and performed shall render this contract null and void, and for the purpose of estimating the amount of money due said first party for shipments of lumber hereunder in case of partial performance the following schedule of prices is hereby mutually agreed upon, to wit: For common rough, $3.50 per thousand feet, board measure; for No. 2 rough, $5.50 per thousand; for No. 1 rough, $9.50 per thousand; and both No. 1 and No. 2 rough shall in-

clude flooring, rustic, or ceiling stock.'' Jones, on the day this agreement was entered into, assigned all his interest therein to the plaintiff, which stipulated faithfully to keep and perform, ''in precise manner and form as in said contract provided,'' his part thereof, which assignment, having also been consented to and signed by Gruber, as a party thereto, contained the following stipulation: ''And the said John L. Gruber, as receiver of the Capital Lumbering Company aforesaid, the said party of the first part in said contract, does hereby consent and agree to the foregoing transfer and assignment by said Jones to said Pacific Export Lumber Company, and in consideration of the premises, and of the covenants and agreements of said Pacific Export Lumber Company, as herein and in said contract expressed, and of the faithful performance thereof, promises and agrees to and with said Pacific Export Lumber Company to faithfully perform and keep each and every of the agreements and covenants on his part in said contract agreed to be kept and performed; and it is mutually agreed by and between said Gruber, as receiver, etc., and said Pacific Export Lumber Company, that the lumber agreed to be sold under the said contract shall become the property of, and the title thereto shall be completely invested in, said Pacific Export Lumber Company as the same shall be paid for according to the terms of said contract.'' Plaintiff on the day the contract was entered into advanced the sum specified therein, and each month thereafter until and including April, 1897, paid the sum agreed upon, such payments aggregating $2,500.

Gruber, in pursuance of the terms of his contract, shipped lumber in car-load lots as ordered by plaintiff, and on April 22, 1897, wrote from Winlock to plaintiff in Portland, Oregon, that a car could be had the following Saturday, but that there was not sufficient lumber to fill it, saying: ''We are short on this order 14,858 feet No. 2 flooring, 19,344 feet No. 3 flooring, 15,000 feet No. 4 ceiling. Kindly advise by return mail what to do to fill this last car.'' The next day plaintiff wrote Gruber a letter, from which an excerpt is taken, as follows:

"We don't quite understand what you say about shortage. Do you mean that there is not enough lumber of the right quality in 1x4? If so, we shall have to let No. 1 go forward as No. 2, and No. 2 in place of No. 3, as far as necessary. We inclose a memorandum of the amount of 1x4 on hand, according to Mr. Lewis' inventory, together with a list of what we have taken, showing that there ought to be enough 1x4 left to fill the balance of order No. 31. If there isn't, then there must have been something radically wrong in the inventory." A summary of the schedule referred to shows that there was estimated to have been in the mill yard at the time of plaintiff's purchase 123,396 feet of 1x4 rough lumber, Nos. 1, 2, and 3, and 35,725 feet of dressed flooring, ceiling, and culls, and that, 63,941 feet of the former and 14,756 feet of the latter having been received, there should be remaining 59,455 and 20,996 feet, respectively. Gruber, in answer to this letter, wrote plaintiff as follows: "Since receiving yours of even date have heard from Mr. Vincent, who has charge of the yard. He says there are about 25,000 1x4 strips left, fit for sheathing only, and 8,000 worked 1x4, of which about one half are culls." Plaintiff's agents, believing from these letters that the sum of $2,500 so advanced by their principal paid for nearly all the material of the specified quality that could be secured under the contract, declined to pay any part of the installment maturing May 1, 1897, until the remainder could be measured; the plaintiff having received, including a lot delivered on the thirteenth of that month, lumber of the value of only $750.07, at $3.60 per thousand, and incurred an expense of $314.91 for planing and kiln-drying it, thus overpaying the sum of $1,435.02, if the price of the lumber be computed at $3.60 per thousand.

Gruber, on June 3, 1897, filed a report in the case of Ida Hining against the Capital Lumbering Company, reciting the terms of the contract for the sale of the lumber, the payments made by plaintiff thereunder, its default, and the alleged reason assigned therefor; that he had caused to be made as careful an estimate of the lumber sold as was possible without

repiling it, and ascertained that it originally consisted of about 900,000 or 1,000,000 feet, of which only about sixty-five per cent had been paid for, and asked that plaintiff might be cited to show why the contract should not be declared void by reason of the default in the payment of said installment, "and a time fixed in which the lumber bought and paid for, but not delivered, and the title of which vests in the Pacific Export Lumber Company, be removed or segregated from the lumber remaining in the hands of your receiver." A citation having been issued, the plaintiff, in response and for a return thereto, averred that the lumber of the quality so purchased by it never exceeded 710,000 feet, of the value of $2,556, and that, having paid on account thereof the sum of $2,500, there was a great uncertainty as to whether any other sum would be due under the contract, and that the doubt in this respect could not be resolved until the lumber was measured, but, when the quantity was ascertained, plaintiff was ready, able, and willing to pay therefor according to the terms of its agreement. The issue thus presented having been tried by the superior court for Lewis County, Washington, it found on June 23, 1897, that at the time said default occurred the receiver had in his possession a large quantity of "merchantable and better lumber," of the value of between $1,300 and $1,500, so purchased by plaintiff herein, which was ordered to pay the receiver the sum of $500 within ten days therefrom; that upon its failure to comply therewith the receiver was directed to declare the contract for the purchase of the lumber forfeited and of no effect. Plaintiff on June 30, 1897, and before the forfeiture of the contract became final, requested Gruber to load upon cars the merchantable lumber remaining, but he refused to comply therewith. Plaintiff, not having paid any part of the installment as ordered by the court, and contending that the title to the lumber, at $3.60 per thousand, vested in it as the payments therefor were made, entered into a contract with the defendants July 14, 1897, whereby they agreed to pay it the sum of $3.60 per thousand for the remainder of the lumber so purchased, and to deliver in part exchange

therefor at Kalama, Washington, 200,000 feet of good, merchantable lumber, at $4 per thousand; plaintiff to advance the freight from Winlock to Kalama.

Thereafter proceedings were instituted in the Supreme Court of the State of Washington by that state, upon the relation of the plaintiff herein, against the judge of the trial court which authorized the declaration of forfeiture of the contract upon plaintiff's failure to comply with the terms of the order, and also against Gruber, reciting the facts involved therein, and the action of said court in respect thereto, whereupon an altenative writ of prohibition was issued; but, a demurrer thereto having been sustained October 15, 1897, the proceeding was dismissed.    Gruber, contending that the forforfeiture of the contract by order of the court abrogated the conditional price of $3.60 per thousand agreed to be paid for the lumber in case the entire quantity was taken, charged the plaintiff for the quantity received the schedule of prices stipulated to be paid therefor in case of the partial performance of the agreement, whereby the quantity so received was valued at the sum of $1,001.57, instead of $750.07 at the uniform price, which, with the sum of $314.91, the expense incurred in dressing and drying the lumber, left of the sum of $2,500 so paid by plaintiff, a remainder of $1,183.52 in Gruber's hands at the time of such forfeiture, in consideration of which he, in pursuance of the agreement entered into between plaintiff and defendants, delivered to the latter lumber, charging plaintiff therefor the said schedule of prices, for which they were to pay it only $3.60 per thousand.    The defendants, having secured possession of the mill of which Gruber was the receiver, offered him, December 14, 1897, the sum of $1,000 for the lumber remaining under plaintiff's contract as originally made, which offer was approved by the court February 18, 1898, but they have never paid any part of that sum therefor.    The court on February 23, 1898, made an order slightly modifying the preceding order, from which the following excerpt is taken:  "Nothing in this order, nor in the order of February 18, 1898, is to be construed as a final adjudication

of the amount of lumber delivered or to be delivered to the said Pacific Export Lumber Company by said receiver under the terms of their contract." The defendants, in answer to plaintiff's request for a statement of the quantity of lumber they had received from Gruber under their agreement entered into with plaintiff for the purchase thereof, wrote it as follows:

"Winlock, Washington, November 4, 1897.
"*Pacific Export Lumber Company, Portland, Oregon*—

"Gentlemen: We can only give you the approximate amount of lumber we have used of your stock at present, but will have the correct tally in a few days. Up to October 19 we have used about 181,000 feet, and 80,000 more up to the twenty-fifth of October. The lumber was taken in small lots, and tally is quite lengthy, but will have a copy for you in a short time.

"Yours truly,

Prescott, Veness & Company."

1. A receiver is an agent appointed by a court to execute its orders in the control and management of business pertaining to property in possession of the court, and the agent has no power to make any contract that can affect such property unless it is ratified by the court appointing him: *Thompson v. Holladay*, 15 Or. 34 (14 Pac. 725). "If the contract," say Gluck & Becker in their work on Receivers of Corporations (§ 38), "be made by the receiver pursuant to the direction or authority given by the court, it then has the character of a judicial one; and the party making it subjects himself to the jurisdiction of the court, and may be required to complete it." Mr. Justice Brewer, in *Kneeland v. American L. & T. Co.* 136 U. S. 90 (10 Sup. Ct. 952), speaking upon this subject, says: "A party bidding at a foreclosure sale makes himself thereby a party to the proceedings, and subject to the jurisdiction of the court for all orders necessary to compel the perfecting of his purchase, and with a right to be heard on all questions thereafter arising affecting his bid which are not foreclosed by the terms of the decree of sale, or are expressly reserved to him by such decree." "Since a receiver," says

Mr. High, in his work on Receivers (§ 186), "is an officer of the court, and all contracts made with him are subject to ratification by the court, it has undoubted power to vacate or modify any agreement or contract which the receiver has made, and to direct the making of another agreement; but it will not exercise such power without notice, and without hearing the contracting parties."

2. Jones, with Gruber's consent, assigned his interest in the original contract to plaintiff, which agreed faithfully to keep and perform the terms and conditions thereof; and the assignment, having been ratified by the court, made the plaintiff a party to the contract, thereby submitting itself to the jurisdiction of the court, which, upon notice, could vacate the contract if the plaintiff refused to perform its part thereof.

3. The pleadings set out and admit the proceedings of the superior court for Lewis County, Washington, from which it appears that a citation was issued, requiring the plaintiff to appear and show why the contract should not be declared forfeited for its failure to pay the installment of $500 maturing May 1, 1897, and that in pursuance of such notice plaintiff's attorney filed an answer controverting the material averments of Gruber's petition, and showing why his client should be relieved from such payment. The authority of plaintiff's attorney to appear for it is not questioned, and, the court in which the proceedings were instituted being a tribunal of general and superior jurisdiction, the judgment rendered therein, declaring a forfeiture of the contract, is not void; and, the fact of a judicial record of a sister state being the same in this state as in the state where it was made (Hill's Ann. Laws § 738), such judgment is binding upon the plaintiff. We do not understand that this action is intended as a collateral attack upon the judgment declaring the contract forfeited, but that plaintiff's counsel, admitting that such judgment put an end to the agreement, contend that by the express stipulation of the parties the title to the lumber vested in the plaintiff as it paid therefor at the rate of $3.60 per thousand, and that,

40 OR.—25.

the quantity to which it was entitled not having been determined by the court in Washington, no error was committed in rendering the judgment complained of. If it be conceded that, upon a purchase of a part without segregation thereof, any title thereto could vest in a purchaser of such part upon the theory that as the payments were made the purchaser acquired an equitable interest in the whole, which, being separated into two or more parts, could result in vesting a legal title to one of them, does the contract warrant the construction insisted upon? It will be remembered that, while Gruber only agreed to sell the lumber to Jones, he stipulated in the assignment of the latter's interest to plaintiff "that the lumber agreed to be sold under the said contract shall become the property of, and the title thereto shall be completely invested in, said Pacific Export Lumber Company, as the same shall be paid for according to the terms of said contract;" the plaintiff agreeing faithfully to keep and perform each of Jones' covenants "in precise manner and form as in said contract provided." Reading the terms of Jones' contract into plaintiff's agreement for the purpose of determining its rights thereunder, it would appear therefrom that instead of a mere agreement to sell lumber, as evidenced by the original contract, plaintiff secured by the assignment an enlarged right, viz., an absolute sale of a given quantity thereof as each payment was made; assuming, without deciding, that a sale could be effected without a segregation. Jones having agreed, however, to purchase all the lumber at a uniform price, it is quite evident from the terms of his contract that if he had performed only a part of his agreement he would have been obliged to pay the market price according to the schedule adopted; for he could only secure lumber at $3.60 per thousand when he took the entire quantity. The plaintiff stipulated that it would keep and perform Jones' agreement "in precise manner and form as in said contract provided," and, while its title may have vested as the payments were made, it could only attach to such a quantity as could be secured by the payment of the market prices, based upon the quality re-

ceived, and not upon the stipulated price, which was applicable only in case it took the entire quantity.

4. It is contended by plaintiff's counsel that Gruber on June 30, 1897, and prior to the expiration of the ten days allowed to pay the installment of $500, having been requested to ship to it the merchantable lumber remaining, which was the poorest quality under the terms of the contract, and the receiver having refused to comply therewith, he, and not the plaintiff, violated the terms of the agreement, and hence no error was committed in rendering the judgment complained of. This contention is without merit; for, if the plaintiff could claim by right any lumber at the uniform price after its default, it was as much entitled to the best quality as to the inferior grade, and, this being so, lumber could have been secured at $3.60 per thousand, to the extent of the payment of $2,500 so made, notwithstanding the default. It was stipulated in the contract entered into between plaintiff and Gruber that any failure to keep or perform the terms of the agreement should render it null and void. The plaintiff neglected to make the payment maturing May 1, 1897, and, when cited to appear, the court did not order the contract to be canceled until ten days after June 23 of that year. This grace, however, was granted to permit the plaintiff to make the payment, and not to secure the lumber at the uniform price of $3.60 per thousand. The defendants' letter of November 4, 1897, shows that they had received from plaintiff's stock of lumber 261,000 feet, while their answer denies that they received from Gruber on its account more than 179,527 feet. We do not think this is an admission of plaintiff's title to the entire quantity so taken, so as to create an estoppel against the defendants; for in Jones' contract the lumber agreed to be sold was denominated "yard stock," and the defendants evidently intended, by referring to the lumber received as "your stock," to identify it as the lumber originally agreed to be sold.

We think the court erred in refusing to grant the nonsuit, and hence the judgment is reversed, and the cause remanded

for such further proceedings as may be necessary, not incon-sistent with this opinion.                                          Reversed.

Decided 27 January, 1902.

On Motion to Modify Judgment.

Mr. Justice Moore delivered the opinion.

5. The judgment in this cause having been reversed on ap-peal, plaintiff's counsel filed an application in the nature of a petition for a rehearing and a remandment for a new trial, from which it appears that under the terms of the contract, as construed by this court, the defendants have not paid the entire purchase price of the lumber received on plaintiff's account. The trial having been had without the intervention of a jury, if the conclusions of law found by the court were not deduci-ble from its findings of fact the cause might have been re-manded, with directions to render a particular judgment: *Merchants' Nat. Bank* v. *Pope,* 19 Or. 35 (26 Pac. 622) ; *Coul-ter* v. *Portland Trust Co.* 20 Or. 469 (26 Pac. 565, 27 Pac. 266) ; *Nodine* v. *Shirley,* 24 Or. 250 (33 Pac. 379) ; *Grant* v. *Paddock,* 30 Or. 312 (47 Pac. 712) ; *Cochran* v. *Baker,* 34 Or. 555 (52 Pac. 520). But where the trial court makes no find-ings of fact in a cause tried before it without a jury, this court is powerless to supply the omission, and must remand the cause for a new trial: *Liebe* v. *Nicolai,* 30 Or. 364 (48 Pac. 172). No findings of fact in respect to the sum remaining due the plaintiff under the terms of the contract, as construed by this court, having been made, the cause will be remanded for a new trial.                                          Reversed.