Argued February 18, modified March 11, 1919.

# THE HOME v. SELLING.

(179 Pac. 261.)

**Mortgages—Assumption of Mortgage—Personal Liability of Grantee.**

1. Where one accepts a deed which not only recites the mortgage, but adds that the grantee assumes it, he becomes personally liable to pay the mortgage.

**Mortgages—Assumption—Right of Mortgagee to Enforce Liability.**

2. When mortgagor conveys the property to one who assumes the mortgage, the obligation of the grantee may be enforced by the mortgagee in an action at law.

[As to assumption of mortgages by grantees, and the liability of such grantees, see note in 78 Am. Dec. 73.]

**Mortgages — Assumption by Grantee — Rescission — Acceptance by Mortgagee.**

3. Grantee's agreement to assume grantor's mortgage cannot be rescinded by the parties thereto, after it has been acted upon or accepted by the mortgagee.

**Mortgages — Assumption by Grantee — Acceptance of Contract by Mortgagee.**

4. Bringing an action by the mortgagee on the contract, whereby mortgagor's grantee assumed the mortgage, is an acceptance thereof by him.

**Executors and Administrators — Filing of Claim — Abatement of Action.**

5. In view of Section 38, L. O. L., providing that no action shall abate by the death of a party where cause of action survives, mortgagee's failure to present claim against estate of mortgagor's grantee, who assumed mortgage, is no defense in mortgagee's action against grantee's executors, where action had been commenced at time of grantee's death.

**Guardian and Ward—Filing of Claim—Necessity.**

6. Where guardian was appointed for grantee who had assumed grantor's mortgage, mortgagee, to recover on mortgage against grantee, was not required to present claim to guardian, and could properly bring action directly against ward, who was required to appear by guardian.

**Mortgages—Answer—Sham Defense.**

7. In mortgagee's action against mortgagor's grantee who had assumed mortgage, defense that grantee did not enter into contract with mortgagee to pay it any sum of money whatever is sham, where record discloses the acceptance of deed wherein grantee assumed mortgage; such acceptance constituting contract to pay mortgage to holder.

Mortgages—Assumption of Mortgage by Grantee—Rights of Mort-
gagee—"Payment."

8. Grantee who has assumed grantor's mortgage cannot defeat pay-
ment of mortgage by tendering the land, for mortgagee cannot be
compelled to accept the land in satisfaction, the agreement being for
payment, which means the delivery of money to the payee.

Mortgages — Assumption of Mortgage by Grantee — Obligation of
Grantee.

9. Where grantee has agreed to pay grantor's mortgage, the cove-
nant therein, as distinguished from the separate personal note, is the
measure of grantee's duty; hence, where mortgage does not call for
payment of more than principal and interest of the note, grantee is
not liable for attorney's fee, although such fees are provided for in
the note, which is quoted in mortgagee's complaint in action to en-
force grantee's liability.

Appeal and Error—Disposition—Modification of Judgment.

10. Where judgment is not in conformity with the findings of
fact, but facts found are sufficient to support a judgment in respond-
ent's favor, the appellate court will correct the conclusions of law
by directing what judgment shall be entered.

Mortgages—Assumption of Mortgage—Successive Conveyances—Sat-
isfaction.

11. Where successive grantees have assumed mortgage, there can
be but one satisfaction, although both grantees are liable.

From Multnomah: ROBERT G. MORROW, Judge.

Department 1.

The plaintiff and the defendant Emanuel May In-
vestment Company are corporations. Emanuel May,
the individual, died during the progress of this litiga-
tion and his personal representatives were substi-
tuted.

On November 21, 1910, George E. Jacobs and his
wife gave their note to the plaintiff for $40,000 due
ten years after date, with "interest thereon quarter
yearly at the rate of 6 per cent per annum from date
until paid." They stipulated therein that "in case
suit is instituted to collect this note or any part
thereof" they would pay a reasonable attorneys' fee
to be determined in the suit. At the same time they
gave their mortgage to the plaintiff on certain real
property in Portland, Oregon, and "covenanted and

agreed to pay all sums of money, the principal and interest, specified in said promissory note at the time therein designated.'' On February 25, 1913, they conveyed the premises to Emanuel May by deed duly executed, containing a statement to the effect that the property was subject to the mortgage mentioned and that ''the grantee herein in part consideration for this conveyance assumes payment of the $40,000 unpaid balance of the first of said mortgages and the interest accrued and to accrue thereon.'' Afterwards May conveyed to the Investment Company by deed which referred to the premises and the mortgage and contained the following words:

''And Emanuel May, the grantor above named, does covenant to and with Emanuel May Investment Company, the above named grantee, its successors and assigns that he is lawfully seized in fee simple of the above granted premises, that the above granted premises are free from all incumbrances except the following mortgages, which are as a part of the purchase price, assumed by Emanuel May Investment Company. * * Mortgage of $40,000.00 in favor of The Home, a corporation, on the North Half of Lot 6 and the South Half of Lot 7, Block 2, City of Portland.''

This action was brought against Emanuel May, the grantee of Jacobs and his wife and against the Investment Company, May's grantee, to recover the interest on the note from November 21, 1915, to February 21, 1917, amounting to $3,000, and the plaintiff claims $300 as a reasonable attorneys' fees.

A demurrer to the complaint on the grounds that Jacobs and his wife are necessary parties, that the action has been brought before the note is due and that the complaint does not state facts sufficient to constitute a cause of action, was overruled.

After denying that the grantees mentioned assumed the payment of the mortgage, and challenging the attorneys' fees and the conclusion that $3,000 is due from the defendants, they interposed three separate defenses. The first of these was to the effect that after the purchase of the land by Emanuel May he became incompetent to transact his own business or care for his property; that a guardian was appointed for him; that afterwards he died and other individuals were appointed as his executors, but that no claims had ever been presented either to the guardian or to the executors covering the demand sued upon. A second defense is negative in its character, to the effect that neither Emanuel May in his lifetime nor the Investment Company ever entered into any contract with the plaintiff by which either of them undertook to pay the latter any sum of money whatever on account of the matters alleged in the complaint, wherefore the plaintiff has no cause of action against either of the defendants. The third is to the effect that the note in question was given for part of the purchase price of the premises, on account of which the mortgagee is not entitled to any deficiency judgment, and that Emanuel May, prior to the time he was declared incompetent, and thereafter his guardian, and still later his executors after his death, had tendered to the plaintiff conveyance of the mortgaged premises to be accepted by the plaintiff in lieu of any claim or demand against May or his estate or the Investment Company. The court sustained a demurrer to each of these further and separate defenses.

The action was then tried, resulting in findings of fact substantially as stated, with the addition that the court found that $200 is a reasonable sum to be allowed as attorneys' fees in the Circuit Court for the

collection of the interest, and the sum of $75 to be a reasonable amount to be allowed as attorneys' fees in the Supreme Court, and rendered judgment against the defendants, the Investment Company directly, and the others in their respective capacities, for $3,000 and for the attorneys' fees as indicated above. The defendants appeal.        MODIFIED.

For appellants there was a brief over the names of *Messrs. Dolph, Mallory, Simon & Gearin, Messrs. Platt & Platt* and *Mr. Palmer L. Fales,* with an oral argument by *Mr. Joseph Simon.*

For respondent there was a brief over the names of *Messrs. Brewster & Mahaffie* and *Mr. Richard W. Montague,* with oral arguments by *Mr. William L. Brewster* and *Mr. Montague.*

BURNETT, J.—One of the principal questions to be determined is whether or not the defendants contracted to pay the mortgage and whether the mortgagee can maintain an action directly against them.

1. According to the decisions in this state, where one accepts a deed which not only recites the mortgage but adds that the grantee assumes it, he becomes personally liable to pay the mortgage: *Miles* v. *Miles,* 6 Or. 266, 269 (25 Am. Rep. 522); *Walker* v. *Goldsmith,* 7 Or. 161, 181; *Haas* v. *Dudley,* 30 Or. 355 (48 Pac. 168); *Farmers' National Bank* v. *Gates,* 33 Or. 388 (54 Pac. 205, 72 Am. St. Rep. 724); *Hoffman* v. *Habighorst,* 49 Or. 379, 391 (89 Pac. 952, 91 Pac. 20). It is plain, therefore, that the acceptance of the deeds mentioned, containing the clauses already quoted, made May and the Investment Company personally liable to pay the mortgage debt.

The original general rule was that one who is not a party to a contract cannot bring an action on it in a court of law, although he might be benefited by its fulfillment. The leading case cited by the defendants is *Keller* v. *Ashford,* 133 U. S. 610 (33 L. Ed. 667, 10 Sup. Ct. Rep. 494). In that instance one Thompson was the owner of certain realty in the City of Washington. He encumbered it by trust deeds in the nature of mortgages and at the instance of a junior mortgagee conveyed it to Ashford, with a clause in the deed as follows:

"Subject, however, to certain encumbrances now resting thereon, payment of which is assumed by said party of the second part."

After foreclosing the mortgage and exhausting the personal assets of the mortgagor, the holder of the note secured by the junior mortgage brought her bill in equity to compel the grantee of the mortgagor to pay the deficiency. The trial court dismissed the bill, holding that Ashford had never accepted the deed to him and that the plaintiff's remedy, if any, was at law. After disposing of the question about the acceptance of the deed by Ashford, adversely to him, the court said:

"The case, therefore, stands just as if Ashford had himself received a deed by which he in terms agreed to pay a mortgage made by the grantor. In such a case, according to the general, not to say uniform, current of American authority, as shown by the cases collected in the briefs of counsel, the mortgagee is entitled in some form to enforce the agreement against the grantee; and much of the argument at the bar was devoted to the question whether his remedy should be at law or in equity. Upon the question whether the mortgagee could sue at law there is no occasion to examine the conflicting decisions in the courts of the sev-

91 Or.—28

eral States, because it is clearly settled in this court that he could not."

The court there worked out the conclusion that the plaintiff was entitled to relief, requiring the grantee to pay the deficiency. We must remember that this was a case brought in the *nisi prius* courts of the District of Columbia, where the rule of the United States courts prevails respecting remedies.

In later cases, notably *Willard v. Wood*, 135 U. S. 309 (34 L. Ed. 210, 10 Sup. Ct. Rep. 831), the principle was applied that the law of the forum governed the remedy and that as the litigation in that suit was commenced in the District of Columbia the remedy would be in equity, although in New York, where the contract was made, an action at law would lie by the mortgagee against the grantee in such instances. Afterwards, in *Union Life Ins. Co.* v. *Hanford*, 143 U. S. 187, 190 (36 L. Ed. 118, 12 Sup. Ct. Rep. 437), the court recognized the condition that in various states the law based upon the decisions of the local courts, was that an action could be maintained under such circumstances and that it was not necessary to resort to equity to enforce the right mentioned. It was applied to the contention there in the following manner: Under the law of Illinois, a mortgagee could sue the grantee directly at law. The corollary to this proposition was that the grantee became the principal debtor and the mortgagor from whom he had received the title was the surety, so that when the mortgagee extended the time in which the grantee might pay the debt, it released the mortgagor, who stood as a surety only. We draw from these decisions, cited by the defendants here, this doctrine, that when the grantee of a mortgagor agrees to pay the mortgage a right at once arises in favor of the mortgagee, and that it is enforce-

able according to the remedy afforded by the *lex fori.*
The effect of the law of the place on the remedy is dis-
cussed in *Gibson* v. *Victor Talking Machine Co.*
(D. C.), 232 Fed. 225.

Oregon precedents are numerous to the effect that
on a contract properly made for the benefit of a third
person, he can bring an action directly against the
promisor. The early case of *Baker* v. *Eglin,* 11 Or.
333 (8 Pac. 280), recognized the liability of the prom-
isor to the third person, so as to exonerate the former
from being held as a garnishee in the action of other
creditors of the promisee. The case does not make
any ruling upon the remedy by which the third person
might enforce his interest in that contract, but in the
following cases the doctrine is recognized that an
action at law would lie: *Hughes* v. *Oregon Ry. & Nav.
Co.,* 11 Or. 437 (5 Pac. 206) ; *Schneider* v. *White,* 12 Or.
503 (8 Pac. 652) ; *Chrisman* v. *State Ins. Co.,* 16 Or.
283 (18 Pac. 466) ; *Washburn* v. *Interstate Invest-
ment Co.,* 26 Or. 436 (36 Pac. 533, 38 Pac. 620) ; *Feld-
man* v. *McGuire,* 34 Or. 309 (55 Pac. 872) ; *Miles* v.
*Bowers,* 49 Or. 429, 434 (90 Pac. 905) ; *Hoffman* v.
*Habighorst,* 49 Or. 379 (89 Pac. 952) ; *Oregon Mill &
Grain Co.* v. *Kirkpatrick,* 66 Or. 21 (133 Pac. 69) ;
*Baker City Mercantile Co.* v. *Idaho Cement Pipe Co.,*
67 Or. 372 (136 Pac. 23).

It is said in 13 C. J. 705, Section 815:

"In most of the states the English doctrine that
where a person makes a promise to another for the
benefit of a third person the latter cannot maintain an
action on it is not recognized to the full extent, but it
is held, subject to the qualifications hereafter stated,
that the action may be maintained. This is now the
prevailing doctrine in the United States"; citing a
wealth of authorities.

But it is not every agreement to discharge an obligation to a third party that will support an action at law by the latter. The principle is thus stated by Mr. Chief Justice BEAN in *Washburn* v. *Interstate Investment Co.*, 26 Or. 436, 441 (38 Pac. 620, 621):

"The prevailing doctrine in this country undoubtedly is that, where one person, as a consideration or part consideration, for an executed contract, promises another, for a consideration moving from him to pay or discharge some legal obligation or debt due from such other to a third person, the latter, although a stranger to the consideration, and not an immediate party to the contract, may maintain an action thereon, if it was made directly and primarily for his benefit."

In *Vrooman* v. *Turner*, 69 N. Y. 280 (25 Am. Rep. 195), the following language was used, and approved in *Kansas City Sewer Pipe Co.* v. *Thompson*, 120 Mo. 218 (25 S. W. 522):

"To give a third party who may derive a benefit from the performance of the promise, an action, there must be, first, an intent by the promisee to secure some benefit to the third party, and second, some privity between the two, the promisee and the party to be benefited, and some obligation or duty owing from the former to the latter which would give him a legal or equitable claim to the benefit of the promise, or an equivalent from him personally."

2. The present case comes within the doctrine thus announced, which, we think, is well settled by the authorities. The stipulation to pay the mortgage was for the benefit of the holder thereof, directly. There was a privity between the mortgagor, who is the promisee, and the holder of the mortgage, resulting from that instrument. There was an obligation from the original mortgagor to the mortgagee to pay; hence, when the mortgagor conveyed his property to May, who assumed the mortgage, at once an obligation

arose which, under our precedents, considering the *lex fori,* could be enforced by an action at law.

The defendants cite *Parker* v. *Jeffery,* 26 Or. 186 (37 Pac. 712); *Washburn* v. *Interstate Investment Co.,* 26 Or. 436 (36 Pac. 533, 38 Pac. 620), and *Brower Lumber Co.* v. *Miller,* 28 Or. 565 (43 Pac. 659, 52 Am. St. Rep. 807). *Parker* v. *Jeffery* was a case in which a contractor had given a bond to the city of Portland to pay for all labor and materials used in the construction of a sewer. This occurred before our present statute on that subject was enacted. No particular claim of any individual was required to be paid. In *Washburn* v. *Interstate Investment Co.* the defendant had agreed to advance to a certain concern money to pay the latter's debts without specifying them, and not to exceed a certain amount. Similar circumstances were present in *Brower Lumber Co.* v. *Miller.* In each of these cases nothing passed to the promisor from the promisee in which the third party had any interest or to which he had any claim. This element, which otherwise would furnish a common bond or *quasi* privity among the three parties, was absent. This circumstance differentiates these cases from the present contention and those like it. The mortgaged property, passing from the mortgagor to his grantee, in which the third party has an interest by virtue of his mortgage, puts the instant case in the class recognized by the quoted language of this court in the Washburn case.

3. One reason given by the courts which refuse to enforce such an obligation except in equity is that the immediate parties to the agreement could annul the same, but that matter is controlled by this doctrine, that such a contract cannot be rescinded by the parties thereto after it has been acted upon or accepted by the

third party: *Davis* v. *Calloway,* 30 Ind. 112 (95 Am. Dec. 671); *Dodge* v. *Moss,* 82 Ky. 441; *Pecquet* v. *Pecquet,* 17 La. Ann. 204; *Mitchell* v. *Cooley,* 5 Rob. (La.) 240; *Gifford* v. *Corrigan,* 117 N. Y. 257 (22 N. E. 756, 15 Am. St. Rep. 508, 6 L. R. A. 610); *Putney* v. *Farnham,* 27 Wis. 187 (9 Am. Rep. 459).

4. Bringing an action by the mortgagee on the contract for his benefit is an acceptance thereof by him: *Taylor* v. *Ingersoll,* 18 Colo. App. 272 (71 Pac. 398); *McCoy* v. *McCoy,* 32 Ind. App. 38 (69 N. E. 193, 102 Am. St. Rep. 223); *Motley* v. *Manufacturers' Ins. Co.,* 29 Me. 337 (50 Am. Dec. 591); *Warren* v. *Batchelder,* 16 N. H. 580; *Zweitusch* v. *Becker,* 153 Wis. 213 (140 N. W. 1056); *Gilbert Paper Co.* v. *Whiting Paper Co.,* 123 Wis. 472 (102 N. W. 20). If the rescission of the contract by Jacobs had been mooted here it is foreclosed by the institution of this action which makes it impossible now to abrogate it without the consent of the plaintiff.

5. We cannot sanction the defense to the effect that no claim had been presented to May's guardian or to his executors. We remember that he died after the commencement of the action. It is said in Section 38, L. O. L.:

"No action shall abate by the death, marriage or other disability of a party, or by the transfer of any interest therein, if the cause of the action survive or continue. In case of the death, marriage or other disability of a party, the court may at any time within one year thereafter, on motion, allow the action to be continued by or against his personal representatives or successors in interest."

6. The effect of sustaining this defense as pleaded would be to abate the action, which the statute just quoted says shall not happen on the death of a party.

It is not required that a claim shall be presented to a guardian. Strictly speaking, indeed, he is not a party to the action. It is properly brought directly against his ward, who must appear by guardian.

7, 8. The second defense to the effect that neither May nor the Investment Company ever entered into any contract or agreement with the plaintiff to pay it any sum of money whatever, is sham, in the legal sense because as the record discloses, the acceptance of the deed drawn in the form stated, amounts to a contract to pay the mortgage to the holder thereof. Again, the offer pleaded in the third separate answer to convey to the plaintiff the property in satisfaction of the deed, cannot be sustained as a defense, because that is not according to the terms of the contract. The agreement is for payment, which means the delivery of money to the payee in discharge of the debt. The plaintiff cannot be compelled to accept the land in satisfaction of its claim, any more than it could be required to accept municipal bonds or a band of cattle. The demurrer to these three separate defenses was properly sustained.

The finding of the court was that the original mortgagor, by the terms of the mortgage, "covenanted and agreed to pay all sums of money, the principal and interest specified in said promissory note at the time therein designated." We remember that in the deed from Jacobs to May the phrase was that:

"The grantee herein in part consideration for this conveyance assumes payment of the $40,000 unpaid balance of the first of said mortgages and the interest accrued and to accrue thereon."

No allusion is made to the note or to any of its incidentals. The agreement is to pay the mortgage and

the action at law against the present defendant is really upon that stipulation.

"If the mortgage contains a covenant to pay the debt secured, although there be no note, bond, or other separate evidence or acknowledgment of the debt, the mortgagor is personally liable, and an action of debt will lie on the covenant": 27 Cyc. 1081.

9, 10. In assuming the payment of the mortgage the covenant therein as distinguished from the separate personal note, was the measure of the grantee's duty. The obligation assumed by him must be construed according to its terms and is not to be enlarged beyond them. The present grantees did not agree to respond directly to the conditions of the note, but only to the mortgage, which latter instrument does not directly bind them to pay more than the principal and interest of the note, hence the attorneys' fee must be laid out of the case, although the note itself is quoted in the complaint. In that respect, strictly speaking, the judgment is not in conformity with the findings of fact, but, as stated in *Miles* v. *Bowers,* 49 Or. 429, 435 (90 Pac. 905, 907):

"The conclusion of law found by the court not being deducible from its findings of facts, the judgment based thereon cannot stand; but, the facts found being sufficient to support a judgment in plaintiff's favor, it is the better practice for this court to correct the conclusions of law by directing what judgment shall be entered: *Coulter* v. *Portland Trust Co.,* 20 Or. 469 (26 Pac. 565, 27 Pac. 266) ; *Pacific Lumber Co.* v. *Prescott,* 40 Or. 374 (67 Pac. 207, 416)."

"Where an installment of interest on the note or bond secured by a mortgage falls due and remains unpaid, without precipitating a maturity of the entire debt, an action may be maintained to recover such installment, independently of the mortgage, unless such a course is forbidden by the statute": 27 Cyc. 1277.

11. On the authority of *Hicks* v. *Hamilton,* 144 Mo. 495 (46 S. W. 432, 66 Am. St. Rep. 431), the contention is made that the Investment Company is a remote grantee and as such is not liable here. In that case the mortgagor conveyed his land merely "subject to the mortgage" without requiring his grantee to assume or pay the encumbrance. The latter in turn deeded the tract to another by an indenture which required that grantee to "assume and pay the mortgage." Thus the continuity of personal liability was interrupted so that its chain did not unite the original mortgagee with the ultimate grantee and for this reason it was held that the latter was not directly liable to the former. The case at bar is different because the clause assuming and agreeing to pay the mortgage is common to both successive conveyances, which constitutes an unbroken sequence of personal liability from the original mortgagors down to the last grantee. Of course there can be but one satisfaction of the demand, although both grantees are liable.

The result is that the judgment is modified by allowing the plaintiff to recover from the defendants the sum of $3,000, without any attorneys' fees.

MODIFIED.

McBRIDE, C. J., and BENSON and HARRIS, JJ., concur.