# 𝕷𝖆𝖜 𝖆𝖓𝖉 𝕰𝖖𝖚𝖎𝖙𝖞

IN THE

# SUPREME COURT

OF THE

# STATE OF NEW YORK.

———◆———◆———

### Deyo and Travis *vs.* Bleakley.

B. leased to A. and I. certain premises, for brick making purposes, by lease, dated Jan. 25, 1853, "from the 1st day of April next, for and during and until the full end and term of five years," thence next ensuing, &c., yielding and paying therefor unto the lessor, yearly and every year, the yearly rent or sum of $4000, " in equal quarter yearly payments, to wit, on the first days of April, July, October and January, in each and every year during the said term." The lease also contained a covenant on the part of the lessees, to the effect that they would at all times have and leave upon said yard, brick enough to secure one quarter's rent, and in case of default in the payment of such rent, the lessor was authorized either to re-enter and take possession of the premises, or to enter upon said yard and take therefrom, and sell at fair market prices, brick enough to pay the rent so in arrear and unpaid. *Held* that the term commenced on the 1st day of April, 1853, and included that day; and that the first quarter's rent was payable on that day, in advance.

*Held also*, that the rent for the quarter commencing October 1, 1854, and ending January 1, 1855, was payable· by the terms of the lease, on the first day of October, in advance; and that upon its remaining unpaid, the lessor was justified in entering upon the premises and selling brick enough to satisfy such rent.

APPEAL by the defendant from a judgment entered at a special term, after a trial at the circuit, before a justice of the court, without a jury. The action was brought to recover the value of a quantity of brick taken by the defendant from premises occupied by the plaintiffs. The defendant leased certain premises at Verplanck, in Westchester county, for brick making purposes, to Aaron and Isaac Mackey, by lease, dated January 25th, 1853, "from the 1st day of April next, for and during and until the full end and term of five years, thence next ensuing, and fully to be completed and ended, yielding and paying therefor unto the said party of the first part, his heirs and assigns, yearly and every year, during the said term hereby granted, the yearly rent or sum of four thousand dollars, lawful money of the United States, in equal quarter yearly payments, to wit, on the first days of April, July, October and January, in each and every year during the said term." The lease also contained a covenant on the part of the lessees, to the effect that they would at all times have and leave upon said yard brick enough to secure one quarter's rent, and in case of default in the payment of such rent, the lessor was authorized either to re-enter and take possession of the premises, or to enter upon said yard and take therefrom, and sell at fair market prices, brick enough to pay the rent so in arrear and unpaid. The defendant entered under the power contained in the last named clause, and took brick of the value of $414, for the payment of the rent of said premises, for the quarter beginning October 1, 1854, and ending January 1, 1855. The brick were so taken by the defendant, October 17, 1854, claiming that the rent of said premises was payable in advance.

The plaintiffs were assignees of Aaron Mackey, one of the lessees, and the brick in question were taken from their possession. Two quarter's rent of the premises, which accrued from April 1, 1854, to October 1, 1854, was paid by two notes dated on or about the first days of April and July, 1854, payable some two months after date, with interest. The above are all the facts material to the case, and were admitted by the parties. The judge who

Deyo *v.* Bleakley.

held the circuit decided that the rent was not payable in advance, and ordered judgment for the plaintiffs for the value of the brick.

*Ferris & Frost,* for the plaintiffs.

*D. W. Travis,* for the defendant.

*By the Court,* BIRDSEYE, J.   There are few subjects upon which greater diversity of opinion has prevailed than in regard to the manner in which time should be computed, in the case of a contract like the lease in question in this action.   The nature of the conflict that existed for a very long time upon the subject, clearly appears from the review of the previous cases made by Lord Mansfield, in *Pugh* v. *The Duke of Leeds,* in *Cowper,* 714.   The true rule was undoubtedly laid down in that case, that the word "from" a day, may either *include* or *exclude* that day, according to the context and subject matter. And the court will construe it so as to effectuate the intentions of the parties, and not to destroy them.   It is at the least very singular that the learned court which delivered this luminous decision should, but three years before, have given precisely an opposite judgment upon almost precisely the same state of facts. (*See Doe* v. *Watton, Cowper,* 189.)

The rule adopted in *Pugh* v. *The Duke of Leeds* is well stated in 2 *Parsons on Contracts,* 175, thus : that the computation shall always conform to the intention of the parties, so far as that can be ascertained from the contract, aided by all admissible evidence.

Let us look at the terms of this whole contract, in the light of these principles.   The lease bears date January 25, 1853. The premises granted are a brick yard ; and the landlord agrees to leave upon the yard all lumber then on said yard, and used for the purpose of manufacturing brick thereon, all arch irons and doors, and all wheelbarrows then thereon, theretofore used by Bennett, (the former occupant.)   It also clearly appears that there were upon the leased premises, shafting, machinery fix-

tures, sheds, pits, boarding houses, barn and stables ; and also that the clay for making the brick was to be taken from pits upon the demised premises. The lessees were also to have the use of all brick material, sand and clay, for the purpose of making brick on said yard, to be found on said premises. The period for which the lease was granted was "*from* the first day of April next, (1853,) for and during and until the full end and term of five years thence next ensuing." There is also a covenant for a renewal of the lease for a further period of five years, at the option of the lessees, the new lease to be " similar in all respects" to the old one. The annual rent reserved is $4000. Such, then, are the privileges granted by the lessor; the use for five years, with a privilege of extension to ten years, of such a property, both real and personal, at so large a rent ; the personal property of a nature likely to suffer great depreciation during so long a term ; and with the authority to convert the soil into brick, and sell the same, thereby diminishing the value of the freehold, and tending to deprive the lands and the fixtures of the plaintiff of their chief value as a source of future revenue. In return for such concessions, it was natural that the defendant should require, and that the lessees should covenant to give him, all the security which the nature of the case would permit. Accordingly, we find a covenant authorizing the plaintiff to re-enter, upon the non-payment of any part of the rent reserved, for the space of ten days after the day of payment, or "if default shall be made in any of the covenants" of the lessees. The tenants also agree that at the expiration or other sooner determination of the term thereby granted, they will leave upon the yard, lumber, arch irons and doors, wheelbarrows and other articles, to correspond with in number, and be equal in value, to those left thereon by the landlord. They also agree to have and leave on the yard, at all times, brick enough to secure one quarter's rent ; and in case of the default of payment of the rent, the lessor is authorized either to re-enter and take possession as above mentioned, or to enter upon said yard and take therefrom, and sell at fair market prices, bricks enough to pay the rent so in arrear and

Deyo *v.* Bleakley.

unpaid. The lessees also bind themselves to keep the said yard and all shafts, machines and the fixtures thereto, sheds, pits, boarding houses, barns and stables, in complete order and repair during the term, and at the expiration or other sooner determination thereof, to leave all of these things in good and perfect order and repair, so as to be in complete readiness for next season's work upon said yard. They also covenant to remove the gravel and screenings necessarily made in the working of the yard, according to the directions of the defendant; also to take and use the clay upon said premises to the bottom thereof, and to use it clean as they go ; and finally, that they will not sub-let or re-let said premises, or assign the same or any part thereof, without the written consent of the lessor.

It is impossible not to perceive in all these provisions a careful design, upon the part of all these contracting parties, to give to the landlord the amplest security which the nature of the leased property or the means of the debtors admitted, for the large sums of money that might, in the course either of five or ten years, become due to him for rent. The power to convert the clay and other materials on the yard into merchandise and sell the same, and the *quasi* chattel mortgage on the brick to be manufactured on and from the plaintiff's ground, to the extent of one quarter's rent, are especially worthy of note, in my view of this case. It seems to me that all these circumstances and provisions are entirely in harmony with what is certainly a consistent reading and construction of the *habendum* clause of the lease, upon which the main question in this case arises. The tenants who had taken the plaintiffs' lands for such purposes, and with such powers, and who had in substance mortgaged the brick they might make for their rent, might well bind themselves to pay their rent in advance. As to the first quarter's rent, the quasi mortgage could give little if any security ; and as to the future quarters, the nature of the property, and its liability to depreciation and injury, seem to afford good reason to the lessor for insisting that the rent should not be suffered to accumulate in arrears, while the brick yard and its fixtures might be left to go to ruin;

thus increasing the inducements which would lead the tenants to break their contract and abandon the property in such a damaged condition.

As, according to the uniform current of authority since the decision of Lord Mansfield, in *Pugh* v. *Duke of Leeds*, the expression in this lease denoting the commencement of the term, viz. "*from* the first day of April next," may be either inclusive or exclusive of the *terminus a quo*, as the parties may have designed; and as, immediately after this expression, there is another which seems to declare that the first day of April in each of the years of the term shall occur at its commencement; (for the rent is to be paid in equal quarter yearly payments on the first days of *April, July, October* and *January*, in each year;) and as these provisions are not only sensible and coherent in themselves, but are in entire consistency, when thus read, with the whole frame work of the lease, I am led to the conclusion that this term did commence on the first day of April, 1853, and included that day; and that the first quarter's rent was payable on that day in advance.

By this exposition the whole instrument is made harmonious. Every word has its effect and operation. No transposition is resorted to. There is in fact no *construction*, in the primary signification of that word; for the parties have made a complete and intelligible work in the contract as they executed it, and it needs not the reforming hand, or the explaining powers of the court, to make it clear and unambiguous. "There is no room for construction, and nothing for construction to do."

It is with great diffidence and regret that I differ from the learned judge who tried this case at the circuit. If transposition is *necessary*, in order to get at the intention of the parties, he is undoubtedly correct in his view; but no rule is better settled than that transposition shall not be resorted to, unless it is necessary for the purpose of carrying into effect the intentions of the parties.

The term *rent* does usually imply some enjoyment, some opportunity to realize a profit by the use of the thing demised, before the rent is payable. But it may be noted that the com-

Deyo *v.* Bleakley.

mon enjoyment, the usual opportunity for realizing a profit by the use of the thing demised, does not, as is the case here, include the power of turning the land into merchandise and selling it for money. That is the great purpose of this lease. The execution of that purpose is constantly tending to destroy the value of the freehold in the demised property. In this case the rent is not merely, as stated by the learned judge, "a return of the thing enjoyed—a profit payable out of the increase of the land;" it is rather a compensation for not returning the thing enjoyed, and a price paid for the conversion of the land into merchandise, which is constantly tending to render the land incapable of returning any increase.

But if the terms of the whole lease, taken together, do not indicate a clear intention to make the rent payable in advance, (and in my opinion they clearly do,) if they only leave it doubtful which mode of payment was intended, then we may look to the acts of the parties under this lease, and see if they have put a practical construction upon it. And it appears that the rent of the two quarters immediately previous to that, the rent of which was intended to be satisfied by the sale of brick for which this suit is brought, was paid *in advance*. It may also be observed that unless the rent is payable in advance, the landlord is really left without security for the last quarter's rent of the premises; for the power of re-entry would be of no avail, after the termination of the lease; and upon an insolvency occurring at any time during the term, the tenants might hold till near the close of the quarter, strip the demised premises of the movable property thereon, dispose of all the brick made, and then, throwing up the lease, set the landlord at defiance. He would then have no redress but their personal responsibility. He has sought to avoid a reliance upon that with a care deserving, if it does not *command*, success.

Upon the whole, I am constrained to the conclusion that the rent of the demised premises for the quarter commencing October 1, 1854, and ending January 1, 1855, was payable, by the terms of the lease, on the first day of October, in advance, and that as it remained unpaid, the defendant was justified by the

lease given by him to the plaintiffs' assignors, in entering and selling the brick, for the taking of which this action is brought.

The judgment should be reversed and a new trial granted; costs to abide the event.

[KINGS GENERAL TERM, October 14, 1856. *Brown, S. B. Strong* and *Birdseye,* Justices.]