ELMER E. SMATHERS, Respondent, *v.* STANDARD OIL COMPANY OF NEW YORK, Appellant.

First Department, January 13, 1922.

**Landlord and tenant — action to recover rent — rent payable at end of term and not in advance unless otherwise stipulated — lease construed not to require payment of rent in advance — plaintiff's motion for judgment on pleadings denied.**

In construing a lease the presumption is that rent is not payable until after it has been earned, and that in the absence of an express agreement to the contrary, rent is payable at the end of the term and not in advance.

In an action to recover rent for three months in advance, it appeared that the lease, which was executed on March 1, 1920, provided that the rent should be " payable in equal quarterly payments, that is to say, Sixty Two Thousand Five Hundred Dollars ($62,500) on the first day of the months of April, July, October and January in every year during the said term," and that the negotiations leading up to the execution of the lease provided for payment in advance, but that the stipulation that the payments should be in advance was omitted from the lease as executed.

*Held*, that the language of the lease is consistent with the idea that the rent was to be paid after it was earned and not in advance, and the fact that April is the first month mentioned in the quarterly periods for the payment of rent does not overcome the presumption that the rent is not payable until after it is earned inasmuch as there is nothing in the lease which in express or conclusive terms states that the rent was to be payable in advance.

Accordingly, plaintiff's motion for judgment on the pleadings cannot prevail, since there is sufficient doubt or uncertainty as to what the parties intended, justifying an inquiry upon the trial of the action as to the circumstances surrounding the negotiations leading up to the execution of the lease finally agreed upon.

CLARKE, P. J., and MERRELL, J., dissent.

APPEAL by the defendant, Standard Oil Company of New York, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 12th day of April, 1921, granting plaintiff's motion for judgment on the pleadings, consisting of a complaint and answer thereto.

*Martin Carey* [*Peter M. Speer* of counsel; *Percy J. King* with him on the brief], for the appellant.

*E. Bright Wilson* [*Caruthers Ewing* of counsel], for the respondent.

GREENBAUM, J.:

The complaint alleges that on March 1, 1920, plaintiff leased to the defendant for the term of ninety-nine years, premises known as No. 12 Broadway, in the city of New York, at the yearly rental of $250,000. The provision in the lease as to the payment of rents is as follows: " To have and to hold said premises * * * unto the tenant from and after twelve o'clock noon on the first day of March in the year One Thousand Nine Hundred and Twenty (1920), for and during the term of ninety-nine (99) years, that is to say, until twelve (12) o'clock noon on the last day of February in the year Two Thousand and Nineteen (2019) * * * rendering and paying for the same to the landlord as rental, the net annual rent or sum * * * of Two Hundred and Fifty Thousand Dollars ($250,000) * * * payable in equal quarterly payments, that is to say, Sixty-Two Thousand Five Hundred Dollars ($62,500) on the first day of the months of April, July, October and January in every year during the said term * * * the first payment to be made upon the execution and delivery of this lease, of an amount proportionate to the time during which the Tenant occupies the

premises and receives the rents up to the first of April in the year One Thousand Nine Hundred and Twenty and the receipt of said rentals up to said first day of April, 1920, is hereby acknowledged."

After alleging that defendant entered into the possession of the premises under the terms of the lease and paid the rent up to the 1st of April, 1920, it is averred that " on the first day of April, 1920, the plaintiff duly demanded of the defendant payment of Sixty-Two Thousand Five Hundred ($62,500) being the quarterly payment due on that date."

The defendant's answer substantially admits the allegations of the complaint excepting the right of the plaintiff to demand payment of a quarterly rent on the 1st day of April, 1920, and affirmatively alleges that the rent was not due for the quarter commencing April 1, 1920, but would become due upon the expiration of that quarter. It is further alleged that the " original agreements in reference to said lease were in writing, true copies of which are hereto attached and made part of this answer and marked Exhibits A-1, A-2 and A-3."

These exhibits were communications that passed between the broker and the plaintiff and the plaintiff and the defendant as to the general terms upon which the lease was to be executed. They make no mention of payment of rent in advance.

The answer also sets up a copy of a proposed lease marked Exhibit B, which the plaintiff had prepared and which had been submitted to defendant for approval. One of the provisions of this proposed lease was that the said yearly rental should be paid quarterly " in advance."

The answer then alleges: " That defendant refused to execute said proposed lease, being unwilling to make such quarterly payments of rental in advance and being dissatisfied with many other provisions of said proposed lease; " that " after some negotiations defendant was requested by plaintiff to rewrite the entire lease," which was accordingly done; that a new proposed lease was thereupon submitted to plaintiff for approval; that the lease as rewritten and subsequently executed omitted the words " in advance; " that plaintiff after retaining the new lease for several days returned it to the defendant suggesting a slight change in certain paragraphs, none of which in any way related to the payment of rental;

that the final lease by its terms " was to take effect March 1st, 1920, from which date defendant was to be liable for rental, but for the convenience of the parties it was agreed orally that plaintiff would collect the rentals due him from tenants of the building up to the 1st of April, 1920, and pay the expenses of operating said building up to said date, and that thereupon the additional rental due plaintiff over and above the amount thus received from the tenants would be adjusted and paid to plaintiff by defendant."

It is a mere commonplace to reiterate the law that in the case of a written contract whose meaning is clearly ascertainable from its language the court will not look beyond the provisions expressed therein and that no evidence of prior negotiations leading up to its execution is admissible to contradict or vary its plain terms.

It is, however, equally well settled that where the language of a contract is ambiguous, indefinite or uncertain in its meaning, extrinsic evidence of the circumstances attending its execution will be permitted to reach the intent of the parties in making it.

In construing the lease before us it is also important to recognize the rule that the presumption is that rent is not payable until after it has been earned, and that in the absence of an express agreement to the contrary, rent is payable at the end of the term and not in advance. (2 McAdam Landl. & Ten. [4th ed.] 1001; 24 Cyc. 1170; 1 Washb. Real Prop. [5th ed.] 10, § 6; *Duryee* v. *Turner*, 20 Mo. App. 34; *Kistler* v. *McBride*, 65 N. J. L. 553; 48 Atl. Rep. 558; *Matter of Dalton*, 183 Iowa, 1013; 168 N. W. Rep. 334.)

It has been held that a provision in a lease fixing stated periods of time for which rentals are to be paid during the term of the lease does not, in the absence of other provisions that the rent is payable in advance for each stated period, imply that the rent is payable in advance, but on the contrary that it is payable at the end of each period. (*Goldsmith* v. *Schroeder*, 93 App. Div. 206; *McCahill* v. *Megs Palace Amusement Co., Inc.*, 167 N. Y. Supp. 373; *Castleman* v. *DuVal*, 89 Md. 657; 43 Atl. Rep. 821.)

In the *Goldsmith Case* (*supra*), which is a decision of this court, plaintiff leased to the defendant an apartment in a

building known as No. 2 West Ninety-fourth street for the term of one year, seven and one-half months commencing February 15, 1902, and ending October 1, 1903, at the annual rental of $1,500 payable " in equal payments of $125 on the first day of each and every month." The court stated (INGRAHAM, J., writing):  " There was no provision in the lease that the rent was payable in advance. The defendant agreed to pay an annual rent of $1,500 payable in equal monthly payments on the first day of each and every month during the term; but this is not stated to be in advance. The payment was to be made on the first day of each month for the rent that had accrued for the preceding month."

The *McCahill Case* (*supra*) followed the rule stated in the *Goldsmith* case. In *Castleman* v. *DuVal* (*supra*), which is a Maryland case, there was a lease which provided for the term of eleven months beginning on the 20th day of October, 1897, and ending on the 20th day of September, 1898, at $641.63 payable $58.33 on the twentieth day of each and every month. In its opinion the court said:  " The lease contains no express stipulation that the monthly installments of rent are to be payable in advance, or at the beginning of the respective months, nor any expression of like import, nor is there anything in its contents creating a necessary implication that it was the purpose of the parties to make the rent payable in advance. The appellee relies largely upon the use in the lease of the words, ' payable $58.33 on the 20th day of each and every month,' in reserving the rent, to support his contention that the several installments were due on the 20th day of the calendar month occurring at the beginning of the respective months of the tenancy. This contention does not bear analysis, because there are but 11 installments of rent, and if we include, as we should, the day on which the term begins and the one on which it ends, there are 12 days in the term, each of which falls on the 20th day of a calendar month. Eleven of these 20 calendar days occur at the end of the respective months of the tenancy, and, in the absence of any provision to the contrary in the lease, the fair and rational construction of that paper would be to presume that the parties to it were aware of the well settled proposition of law that rent, in the absence of a contrary provision in the

lease, is not due until the end of the term, and to hold them to have intended the several installments of rent to fall due on the 20th calendar days which occur at the end of the respective months of the tenancy."

In *Liebe* v. *Nicolai* (30 Ore. 364), also reported in 48 Pacific Reporter, 173, the lease provided for the payment of rent " in monthly payments of $75 each, the first payment thereof to be made on the 1st day of January, 1892." In construing this lease the court said: " It will be remembered that the first installment of rent became payable on the first day of the term, but, there being no contract that the other payments were to be made in advance, can it be said, from an inspection of the lease, that such a construction was contemplated by the parties to it? The rule seems to be well settled that when the lease contains no covenant fixing the time when the rent shall become due, it is payable at the end of the term." (Citing numerous authorities.)

On the other hand there are cases which seemingly hold to the contrary of those above mentioned. In *Deyo* v. *Bleakley* (24 Barb. 9, decided 1856) a lease of a brick yard was construed, the term of which was from the 1st day of April, 1853, next for five years. The rent was $4,000 per year payable " in equal quarter yearly payments, to wit, on the first days of April, July, October and January in each and every year during the said term." It was there held that the term commenced on the 1st day of April, 1853, and included that day and that the first quarter's rent was payable on that day in advance. It may, however, be observed that the court in that case reached its conclusion after a consideration of attendant circumstances from which the intention of the parties was gathered, one significant circumstance being that the parties had placed a practical construction upon the lease by making payments in advance and another circumstance being the fact that the lease contained a provision for security to the landlord that the lessees " would at all times have and leave upon said yard, brick enough to secure one quarter's rent," etc., as to which the court said: " It may also be observed that unless the rent is payable in advance, the landlord is really left without security for the last quarter's rent of the premises."

The fact that the quarterly periods mentioned in the lease under review begin with the first day of April gives persuasiveness to the argument that it was the intention of the parties that the first quarterly rent became due on the 1st day of April, 1920. But the *Goldsmith* and other cases *supra* cited have held otherwise.

We are here asked to construe the lease and declare the intention of the parties upon the pleadings. In so doing, however, we must assume the truth of the allegations in both pleadings. The answer shows that the original proposed lease prepared by the plaintiff's attorneys expressly used the words " in advance " in connection with the quarterly payments, whereas in the lease as finally executed those words were omitted. It is also to be borne in mind that the financial status of the defendant to pay the rent reserved is concededly of the highest order and that there were provisions for security in the first draft of lease submitted in behalf of the landlord, to which the defendant refused to accede because of its well-known recognized financial stability and which, therefore, were omitted in the final lease.

It is our opinion that the language of the lease is consistent with the idea that the rent was to be paid after it was earned and not in advance. It is true that in the enumeration of the quarterly periods, April is the first month mentioned, but that would be explainable because the original draft of the lease prepared by plaintiff's attorneys stated April as the first quarter and is consistent with an interpretation that the quarterly payments were to be made after the rent had accrued. Let us, however, assume that it is a debatable question; that one may infer or deduce that the rent was to be paid in advance; nevertheless as against such inference would be the presumption that rent is not payable until after use, inasmuch as there is nothing in the lease which in express or conclusive terms states that the rent was payable in advance.

It may also be added that the court in this jurisdiction might be justified in taking judicial notice of the fact that in most leases rent is payable in advance and yet we find that it is the practically universal custom to expressly state in such leases that the rent is payable " in advance," doubtless due to the generally accepted legal presumption that in the

absence of express language that the rent is to be paid in advance, it would not be payable until after the expiration of its term or of the periods for payment mentioned in the lease.

We are thus confronted with a situation where there is sufficient doubt or uncertainty as to what the parties intended, justifying an inquiry upon the trial of the action as to the circumstances surrounding the negotiations and leading up to the execution of the lease finally agreed upon.

Under the circumstances plaintiff's motion for judgment on the pleadings cannot prevail. It follows that the order appealed from must be reversed, with ten dollars costs and disbursements, and plaintiff's motion denied, with ten dollars costs.

LAUGHLIN and SMITH, JJ., concur; CLARKE, P. J., and MERRELL, J., dissent.

Order reversed, with ten dollars costs and disbursements, and motion denied, with ten dollars costs.