LEE HOY, ET AL., COPARTNERS DOING BUSINESS UNDER THE FIRM NAME AND STYLE OF HOP SING IN COMPANY, *v.* KAPIOLANI ESTATE, LIMITED.

No. 1356.

EXCEPTIONS FROM CIRCUIT COURT FIRST CIRCUIT.
HON. J. T. DEBOLT, JUDGE.

ARGUED MAY 23, 1922.                    DECIDED JUNE 22, 1922.

PETERS, C. J., EDINGS AND PERRY, JJ.

TIME—*construction of word "from" in denoting, in a lease.*

In a demise for a term of thirty years commencing "from the 1st day of July, 1882," reserving rental payable in advance and providing that "the second payment of the said rent" shall be made on the 1st day of July next ensuing the day last afore-

said, the word "from" is used in an inclusive sense and the last day of the term is June 30, 1912.

LANDLORD AND TENANT—*construction of sublease—as between lessee and sublessee.*

> As between the original lessee and one to whom he demises a part of the same property for all of the unexpired term of the original lease, the transaction is to be regarded as a sublease, and not as an assignment *pro tanto*, when it appears that the parties so intended.

OPINION OF THE COURT BY PERRY, J.

By an instrument dated July 1, 1882, the commissioners of crown lands of the Kingdom of Hawaii leased to one Kapooloku (Her Royal Highness Princess Poomaikalani) three separate tracts of land, one being called Kauamoa and situate at Waikiki; another being called Piliamoo, also situate at Waikiki and the third being called Puahia, situate at Manoa, all on this island. By mesne assignments this lease passed to the Kapiolani Estate, the present defendant.

Kapooloku, by an instrument dated July 1, 1889, did "convey by lease" the land of Puahia above mentioned "and to hold the said lease unto" one Keawe and eleven other persons; and by mesne assignments the interest created by this latter instrument passed to the present plaintiffs. On January 16, 1911, the Kapiolani Estate, Limited, being in arrears as to the rent reserved under the lease from the commissioners of crown lands, that corporation and the present plaintiffs were ejected from the land of Puahia at the instance of the Territory of Hawaii, the successor in interest to the commissioners of crown lands. A few days prior to this dispossession the plaintiffs had paid to the Kapiolani Estate, Limited, all of the rent reserved under the lease to Keawe for a period of time extending several months beyond the 16th day of January, 1911, all prior rents having been faithfully paid by the lessees under the lease to Keawe. The present

plaintiffs thereupon brought the present action for re-
covery from the Kapiolani Estate, Limited, of the dam-
ages suffered by the plaintiffs by reason of the dispposes-
sion and the earlier determination of the lease to Keawe
thereby effectuated.

The foregoing and all other material facts in this opin-
ion stated were presented to the jury at the trial under
stipulation of the parties to the action; and the plaintiffs
thereupon rested. The defendant moved for a nonsuit
and the motion was granted and judgment was entered
accordingly. The case comes to this court on exceptions
from that ruling and judgment.

The theory underlying the nonsuit was that the lease
to Keawe operated in law as an assignment *pro tanto* of
all of the interest of Kapooloku in Puahia under the
lease from the commissioners of crown lands; that the
relation of landlord and tenant did not exist between the
Kapiolani Estate, Limited, and the present plaintiffs and
that therefore this action would not lie in favor of the
plaintiffs and against the defendant.

Of importance in determining whether the lease to
Keawe constituted an assignment *pro tanto* of the orig-
inal lease from the commissioners or merely a sublease is
the ascertainment of whether or not in the lease to Keawe
Kapooloku reserved to herself a part, however short, of
the term of the original lease. The lease from the com-
missioners was "for and during the term of thirty years,
to commence from the 1st day of July, 1882," while the
lease to Keawe was "for the term of twenty-three years
commencing from the day of the date of this instrument"
(July 1, 1889) "and ending on the 30th day of June,
1912." There can be no doubt that under the latter in-
strument the lessees were entitled to hold the demised
property throughout the 30th day of June, 1912. Under
the lease from the commissioners, what was the last day

of the term? The only two possible alternatives are the 30th day of June, 1912, and the 1st day of July of the same year. The term of thirty years being expressed to commence from the 1st day of July, did the term include or exclude that day? In denoting time the word "from" may be correctly used either as excluding or as including the day with reference to which it is used. This being the case it would seem that whether in a given instance it is used as inclusive or as exclusive would be a matter of interpretation of the instrument in view of all of its provisions and the light afforded thereby. This is the view of what seem to us to be the better authorities on the subject. As expressed by one court, the true rule seems to be "that the words 'from the day' may either include or exclude that day, according to the text and the subject-matter, and the court will construe it so as to effectuate the intentions of the parties and not to destroy them." *Meeks* v. *Ring*, 4 N. Y. S. 117, 118. To the same effect are *Deyo* v. *Bleakley*, 24 Barb. 9, 11; *Taylor* v. *Brown*, 40 N. W. (Dak.) 525, 530; *McGinley* v. *Laycock*, 94 Wis. 205, 209. The commissioners' lease was "made this 1st day of July, A. D. 1882," reserves a rental of $220 per year and provides that the lessee shall pay the same "from and immediately after the commencement of the said term and during the continuance thereof * * * in advance," and that "the second payment of the said rent" shall "be made on the 1st day of July next ensuing the day last aforesaid." If the second day of July was to be the first day of the term demised the second day of July would also be the first day of each year which the payment of rent was to cover and even under the requirement of an annual payment *in advance* it would ordinarily and naturally not be provided that the payment should be made before the beginning of the year. Ordinarily the provision would be under these circumstances that the payment would be on

the first day of the year or other periodical term to be covered by the rent paid.

We think that it sufficiently appears from the text of this instrument that the word *from* was used in its inclusive sense and that therefore the last day of the term should be June 30, 1912. In other words, the original lessee in and by the lease to Keawe demised the whole of the term to which she was entitled under the original lease. It is held by what appears to be a preponderance of the authorities that when this course is pursued the transaction constitutes, as between the original lessor and the last lessee or the assignee of the lease, an assignment of the lease and not a sublease; and also that when the question arises as between the original lessor and the last lessee it is immaterial that the rent reserved by the lease to the last lessee is greater than that reserved by the original lease and that a right is reserved for reentry for condition broken. "Any conveyance by a lessee of his whole interest in demised premises, leaving no reversionary interest ·in himself, operates as an assignment regardless of the form of the instrument of transfer." *McLennan* v. *Grant,* 8 Wash. 603, 608. Quoting from 1 Woodf. Landlord & Tenant, 258, the court in *Craig* v. *Summers,* 47 Minn. 189, 191, 192, says: "An assignment, as contradistinguished from a sublease, signifies a parting with the whole term; and whenever the whole term is made over by the lessee, although in the deed by which that is done the rent and a power of reentry for non-payment are reserved to himself, yet the instrument amounts to an assignment, and not a sublease; and in such case the person to whom it is made over may sue the original lessor or his assignees of the reversion, or be sued by them, as assignee of the term, on the respective covenants of the original lease which run with the land, even though new covenants are introduced into the assignment." The rule

has often been stated substantially to this effect. Where the lease granted by the original lessee deals with a part only of the land demised to him the transaction is regarded as an assignment *pro tanto* upon the theory that it is the quantity of the interest that passes, and not the amount of the land affected thereby, which determines whether the transaction is an assignment of the original lease or is a sublease. See, for example, 18 A. & E. Ency. 656, 657; 24 Cyc. 976; and *Cook* v. *Jones,* 96 Ky. 283, 292.

There is, however, a respectable minority of courts which hold that the reservation of a right of re-entry upon condition broken is a reservation of a contingent interest or estate in the land and that therefore the transaction does not pass the entire interest of the original lessee and is a sublease only. Which is the better rule, upon reason, we need not consider, for in the case at bar the question does not arise as between the original lessor and the last lessee. So also, for the same reason, what would be the effect of the unusual provision in the lease to Keawe which appears to authorize a termination of·the tenancy in so far as any one or more defaulting lessees are concerned and which further authorizes the substitution by the original lessee of one or more other persons in place of such defaulting lessees, need not be determined.

Many of the authorities which declare the law as above recited, reaching the conclusion that the transaction is to be regarded as an assignment of a lease and not as a sublease, make no distinction with reference to the parties between whom the question arises. The distinction, however, to which attention is called by some of the authorities on the subject appeals to us as being sound and that is, that as between the original lessee and the person to whom he leases the transaction is to be regarded as a sublease if the parties so intended. Resort to this distinction is had by courts in order, doubtless, to enable

them to effectuate justice and equity.   When the original lessee demises to another, both parties intending to create thereby as between themselves the relation of landlord and tenant; and when in pursuance of such a lease and such an intention the parties deal with each other for a long period of time as though they were landlord and tenant and the tenant pays to the original lessee, and the latter as landlord accepts, all of the rents due from time to time in accordance with the terms of their contract; and when under these circumstances the original lessee, after having received from the tenant the rent due for several months in advance, defaults in his obligations to the original lessor and by reason of that default is ousted, together with his tenants, from the possession of the property,—it would result in injustice and inequity to the subtenants to permit the original lessee to successfully claim that he had no further interest or place in the transaction after the execution of his lease to the sublessee. To so hold would enable him to reap the fruits and the benefits of his contract and at the same time to escape its burdens and obligations.

"It is also well settled that the same instrument may in law constitute an assignment of the term, as between the original lessor and the assignee, and also the relation of landlord and tenant between the parties to the second demise. * * * This distinction seems to be lost sight of in some of the cases." *Craig* v. *Summers*, 47 Minn. 189, 192.

"The effect, therefore, of a demise by a lessee for a period equal to or exceeding his whole term is to divest him of any reversionary right and render his lessee liable, as assignee, to the original lessor; but at the same time the relation of landlord and tenant is created between the parties to the second demise if they so intended." *Stewart* v. *Railroad*, 102 N. Y. 601, 608.

"However, as between the lessee and one who takes a conveyance of the whole term the transfer will operate as a sublease, when such is clearly the intention of the parties as evidenced by their contract, but this is not con-

clusive upon the original lessor, as to whom the transaction is an assignment." 7 A. & E. Ann. Cas. 539, n.

"Questions similar to this have frequently arisen in the courts and there is an apparent conflict in the decisions which can be in the main resolved by separating those cases wherein the controversy arose between the original tenant and his lessee or assignee from those wherein the controversy was between the original landlord and the lessee or assignee of his tenant." *Jordan* v. *Scott,* 177 Pac. (Cal.) 504, 506.

"In a suit between" the owner and "the sublessee a construction of the sublease as an assignment would be correct; but, where the controversy arises between the lessee and subtenant the transfer will be held to operate as a sublease rather than an assignment when such is clearly the intention of the parties to the contract." *Frith* v. *Wright,* 173 S. W. (Tex.) 453, 454. To the same effect are 1 Taylor, Landlord & Tenant (8th ed.), p. 17, n; 24 Cyc. 976; and 16 R. C. L. Sec. 320.

In *Weander* v. *Claussen Brewing Ass'n.,* 42 Wash. 226, relied upon by the defendant, the court did not recognize this distinction. Upon the reasoning above stated, we prefer not to follow that decision.

In the case at bar the facts above related amply demonstrate that it was the intention and understanding of both parties to the last demise that the transaction between them was a sublease and that the relation of landlord and tenant was thereby brought into existence between them. In this controversy between them, to which the commissioners of crown lands and their successor, the Territory of Hawaii, are not parties, the transaction must be regarded as a sublease. Viewing, then, the instrument in question as a sublease a covenant of quiet enjoyment is to be implied from the fact of leasing.

"With respect to estates less than freehold, covenants for title were from the earliest times implied not only from the words of leasing, such as 'demisi,' 'concessi,' or the like, but even from the relation of landlord and ten-

ant, and such is the law at the present day, unless where, as in some of the United States, it has been altered by legislation." Rawle's Covenants, Sec. 272.

"The covenants for title thus implied from the words of leasing were and are two—first a covenant that the lessor has the power to demise, and secondly a covenant for quiet enjoyment." Ib. Sec. 273.

"In every lease there is an implied covenant of quiet enjoyment." *Duff* v. *Wilson*, 69 Pa. 316, 318. To the same effect see *Knapp* v. *Marlboro*, 29 Vt. 280, 286; *Wade* v. *Halligan*, 16 Ill. 507, 511; and *Maeder* v. *Carondelet*, 26 Mo. 112, 115.

Upon the admitted facts stated to the jury the plaintiffs were entitled to recover the damages resulting to them from the defendant's failure to preserve its title as lessee and from the consequent ousting of the plaintiffs by the Territory of Hawaii. It was therefore error to grant the nonsuit.

The exceptions are sustained and the cause is remanded to the circuit court for a new trial.

*W. W. Thayer* for plaintiffs.

*J. Lightfoot* for defendant.