■ BAKAS RESTAURANT, INC., Appellant, v PETER CHAROS et al., Respondents. — In an action for a declaratory judgment to interpret, *inter alia,* a rent escalation provision in a commercial lease, plaintiff lessee appeals from a judgment of the Supreme Court, Suffolk County (Geiler, J.), dated June 7, 1984, which, upon a written stipulation of facts, dismissed the complaint and

granted judgment in favor of the defendants lessors on their counterclaims.

Judgment reversed, on the law, without costs or disbursements, and matter remitted to the Supreme Court, Suffolk County, for a hearing so that the subject lease provision can be interpreted in light of the circumstances, background and intention of the parties.

In 1969 the plaintiff purchased a diner restaurant business from the defendants. In connection with that purchase the parties entered into a written lease agreement prepared by the attorney for the defendants whereby the plaintiff leased the real property on which the diner is situated from the defendants for a term of 35 years.

The parties submitted this matter to Special Term upon an agreed statement of facts seeking a determination with reference to the rent escalation provision of their written lease which was executed in June 1969. According to section 12 of the parties' written stipulation the controversy concerns the following language of the lease:

" 'The tenant shall pay annual rents hereinafter provided to be paid in equal monthly payments in advance on the first day of each and every month during the term as follows:

| "(a) | i. | First five years | $ 6,500.00 |
| | "ii. | Next five years | $ 6,500.00 |
| | "iii. | next five years | $ 8,500.00 |
| | "iv. | next five years | $10,500.00 |
| | "v. | next five years | $11,500.00 |
| | "vi. | next five years | $13,000.00 |
| | "vii. | next five years | $15,000.00 |

"(b) At the end of each of the foregoing five (5) year terms, the rent that shall be paid by the lessee shall be the amount hereinabove provided or that amount as increased by the percentage of the cost of living index published by the Bureau of Labor Statistics of the United States Department of Labor or such equivalent based upon such index as the same shall be effective at the end of June, 1969, the effect of which will be sufficient to give the landlord for the second through seventh terms a total net rental equal to the purchasing power of $6,500.00 (or the applicable base rent for the additional terms as the case may be) in June, 1969." ' "

After setting forth their respective positions concerning the above-quoted language the parties further stipulated that "[i]n the event that the Court comes to the conclusion that it cannot

render a decision in this controversy without having the testimony of the respective parties concerning the particular clause of the lease agreement which is in dispute, the parties will agree to appear at a hearing to be set by the Court for said purpose".

Both sides agree that the escalation provision entitles the defendant landlords to the larger of either the specified annual figure or a figure multiplied by the percentage change in the cost of living index from 1969 to the beginning date of the period in question. However, the parties differ as to whether the percentage change in the cost of living index is to be applied to a constant base of $6,500 or to the specified base rents for each of the five-year periods.

The plaintiff lessee contends that the annual rent during the third five-year period should be $12,467, which amount represents $6,500 (the original base figure) times the percentage change in the cost of living index. On the other hand, the defendants maintain that the base to be utilized is the third-period figure of $8,500, which yields an annual rental of $16,303 when multiplied by the percentage change in the cost of living index.

Special Term found the subject rent escalation clause to be unambiguous and synthesized the issue before it into the following question: "Is the cost of living index of 91.8 percent to be applied to a constant base of $6,500.00 or is it to be applied to the different base rents for each of the five periods of the lease commencing with the beginning of the third five year period?"

We agree with Special Term's formulation of the issue which must ultimately be decided in this case. However, we find that the precise meaning and intent of the alternative provisions of the rent escalation formula cannot be discerned from the lease itself and should be resolved at a hearing. The following words from the lease agreement appear to support the landlord's claim: "At the end of each of the foregoing five (5) year terms, the rent that shall be paid by the lessee shall be *the amount hereinabove provided or that amount* as increased by the percentage of the cost of living index * * * based upon such index as the same shall be effective at the end of June, 1969" (emphasis added).

However, doubt is then cast on the subject and ambiguity is introduced by the following words: "the effect of which will be sufficient to give the landlord for the second through seventh terms a total net rental equal to the purchasing power of $6,500.00 (*or* the applicable base rent for the additional terms as the case may be) in June, 1969" (emphasis added).

This language suggests that the landlords are to have the alternative of receiving, at the landlords' option, either the

stipulated rent of $8,500 for the period in question or the sum of $6,500 as increased by the cost of living index after June 1969, so that the landlords would receive a total net rental not less than the purchasing power of $6,500 in June 1969. In sum, because the words of the escalation clause are susceptible of differing interpretations the matter must be explored further so that the true intent of the parties concerning the provision can be determined. As was observed in *67 Wall St. Co. v Franklin Natl. Bank* (37 NY2d 245, 248-249): "Unlike the trial court, we find article 41 to be ambiguous, susceptible of differing interpretations. Although recognizing the proposition that words are never to be construed as meaningless if they can be made significant by any reasonable construction (*Matter of Buechner*, 226 NY 440, 443; *Allen v Forsyth*, 25 NYS2d 822, 825; *R. I. Realty Co. v Terrell*, 254 NY 121, 124), we also recognize that if several such constructions are possible, the court can look to the surrounding facts and circumstances to determine the intent of the parties (*O'Neil Supply Co. v Petroleum Heat & Power Co.*, 280 NY 50, 55-56; *St. Regis Paper Co. v Hubbs & Hastings Paper Co.*, 235 NY 30, 35-36; *Lamb v Norcross Bros. Co.*, 208 NY 427, 431; *Levinson v Shapiro*, 238 App Div 158, 160, affd 263 NY 591; 4 Williston, Contracts, § 618). Thus, while the parol evidence rule requires the exclusion of evidence of conversations, negotiations and agreements made prior to or contemporaneous with the execution of a written lease which may tend to vary or contradict its terms (*Newburger v American Sur. Co.*, 242 NY 134, 142), such proof is generally admissible to explain ambiguities therein (*O'Neil Supply Co. v Petroleum Heat & Power Co.*, supra; *Kalmon Dolgin Co. v Walnut Lanes*, 27 AD2d 843; *Smathers v Standard Oil Co. of N. Y.*, 199 App Div 368, 371, affd 233 NY 617; *Anchin, Block & Anchin v Pennsylvania Coal & Coke Corp.*, 284 App Div 940, 941, affd 308 NY 985)".

More evidence is necessary to explain what we perceive to be an ambiguous clause. Mangano, J. P., Gibbons, Bracken and Niehoff, JJ., concur.